Michael A. McCARTHY, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 92–SC–0264–MR.

Supreme Court of Kentucky.

Oct. 28, 1993.

Rehearing Denied Jan. 31, 1994.

Daniel T. Goyette, and J. David Niehaus, Deputy Appellate Defender, of the Jefferson District Public Defender, Louisville, for appellant.

Chris Gorman, Atty. Gen., Gregory C. Fuchs, Asst. Atty. Gen., Crim. App. Div., Frankfort, for appellee.

REYNOLDS, Justice.

This appeal is from a judgment of conviction for burglary in the first degree, assault in the fourth degree, and PFO in the second degree. Appellant received sentences of imprisonment respectively for ten years, 12

months, and the enhancement of the burglary conviction from ten years to 20 years. He appeals to this Court as a matter of right. We affirm.

This appeal raises two issues: (a) Whether it was error to permit introduction of testimony concerning previous emergency protective orders; and (b) whether the trial court erred by not allowing voir dire as to the complete penalty range. Such issues require consideration of the facts.

The victim of the assault was appellant's estranged wife and, at the time of the crimes, he was subject to an emergency protective order (EPO) which prohibited him from coming about his wife or onto her premises. Irrespective, appellant went to the home of his estranged wife, sought and was denied entry, and thereafter kicked down the door. He then entered the dwelling. A visitor, an off-duty police officer, left the house to summon assistance. A fight erupted between appellant and his wife and, as a result, she sustained injuries.

At trial a deputy clerk testified as to the general nature of EPOs and read from the most recent order against appellant. The clerk, over objection, was permitted to testify as to a history of EPOs against appellant, as there were prior EPOs in effect.

At issue is the prejudice sustained by virtue of the evidence relating to the EPOs. Appellant contends that the only evidence which should have been admitted was the current/pending EPO directing him to stay away from the premises, and that was a fact which he offered to stipulate. In his claim of prejudice he refers to a written question emanating from the jury during its deliberation which is as follows:

> Under Instruction # 1, *section a* (the burglary instruction) the phrase "with intent to commit a crime" can you tell us if this refers to the crime of coming onto the property or the crime of assault?

The trial court responded by furnishing this answer—"To commit any crime."

Appellant states that the question indicated a jury belief that he was guilty of burglary when he intentionally violated the EPO rather than when he entered into the dwelling with the intention of assaulting his wife. Additionally, he states that the trial court's answer did nothing to eliminate confusion; that it contributed to the mistaken impression that a violation of an EPO is a sufficient criminal act to satisfy the burglary statute. Appellant's request for an admonition that an EPO was not proof that he was guilty of a crime was denied.

Kentucky Rules of Evidence Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
> (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or
>
> (2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

It is quite evident that the EPOs, issued at the behest of the victim, ordering appellant to stay away from her house, in the time framework of this case, are relevant as evidence of motive or state of mind, and also as part of the immediate circumstances bearing on the crimes charged. *Matthews v. Commonwealth*, Ky., 709 S.W.2d 414 (1986). While the prosecution is not privileged to show unconnected and isolated unlawful conduct that had no bearing whatsoever upon the crime under scrutiny, yet all the circumstances may be shown which have a relation to the particular violation of the law imputed, even if, in so doing, other offenses may be brought to light. *Francis v. Commonwealth*, Ky., 468 S.W.2d 287 (1971).

We continue to reject the position that there is any absolute right on the part of one spouse to be with the other against the other's wishes, giving a right to break into the home of the other with the intent to commit a crime. Burglary is an invasion of the possessory property right of another and extends to a spouse. *Matthews, supra.*

We disagree with appellant's claim that the jury's question directed to the trial court disclosed that the jury considered the violation of an EPO as evidence of a crime so as to render the defendant guilty of burglary. Such a position is speculative. Burglary in the first degree, KRS 511.020, provides:

(1) A person is guilty of burglary in the first degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building, and when in effecting entry or while in the building or in the immediate flight therefrom, he or another participant in the crime:

(a) Is armed with explosives or a deadly weapon; or

(b) Causes physical injury to any person who is not a participant in the crime; or

(c) Uses or threatens the use of a dangerous instrument against any person who is not a participant in the crime.

While appellant contends he went to the house to confer with his wife and not with the intent to commit an assault, he may be convicted of the crime of burglary providing the jury finds that he knowingly entered the building with intent to commit a crime or that he remained unlawfully in the building with intent to commit a crime. Therefore, even if one believes that appellant did not have the requisite intent as he entered the house, one could surely believe he subsequently formed the intent necessary to be guilty of the crime of burglary.

■ The trial court's answer to the jury's question is deemed to be a correct statement of the law. The video record discloses that counsel acquiesced to the judge's decision to answer in the manner that he did.

Three versions of the facts exist from which the jury could choose to believe. The visiting off-duty police officer observed the door being knocked down, but advised that no physical confrontation occurred during the minute that it took him to leave the premises. The gist of appellant's testimony remains that he did not intend to fight, but he could not control his emotions. The victim's version was that after the appellant's stormy entry, the next thing she recalled was fighting with appellant.

■ The jury was instructed on first-degree burglary as well as first-degree criminal trespass. Under these facts, it was for the jury to determine whether appellant formed the requisite intent to be guilty of burglary rather than criminal trespass. There was sufficient evidence before the jury for them to find the appellant guilty of burglary in the first degree.

Appellant's second contention is that the trial court erred by not allowing voir dire on the complete penalty range. On voir dire, the Commonwealth told the jury that ten to 20 years is the penalty range for this crime, burglary in the first degree, and asked if anyone could not impose such sentence. No one responded. Appellant contends that he wanted to tell the jury that the correct permissible range was 20 years to life as this appellant would be subject to the PFO statute.

The appellant's argument, as the record reveals, was not preserved for appellate review. He did move for voir dire on the penalty range of burglary in the first degree and assault in the second degree, but no further. There is no analogy as to what was presented to the trial court and to this Court. *Kennedy v. Commonwealth*, Ky., 544 S.W.2d 219, 222 (1976).

■ It is provided by *Shields v. Commonwealth*, Ky., 812 S.W.2d 152 (1991), that in order to be qualified to sit as a juror in a criminal case, a member of the venire must be able to consider any permissible punishment. If he cannot, then he may be properly challenged for cause. A meaningful voir dire examination by both sides is a *sine qua non* to the seating of a fair and impartial jury.

KRS 532.080(5) provides: "A person who is found to be a persistent felony offender in the second degree shall be sentenced to an indeterminate term of imprisonment pursuant to the sentencing provisions of KRS 532.-060(2) for the next highest degree than the offense for which convicted." Here appellant was convicted of burglary first degree, a Class B felony. KRS 532.060(2) provides: "The authorized maximum terms of imprisonment for felonies are: (a) For a Class A

felony, not less than twenty (20) years nor more than life imprisonment; . . . ."

Appellant was convicted of a Class B felony, however, under the Persistent Felony Offender statute, he is to be sentenced in accordance with the next highest degree than the offense for which he was convicted. Hence, appellant was to be sentenced under the Class A felony provision which provides for not less than 20 years nor more than life imprisonment. In this case a 20 year sentence was imposed. As appellant received the minimum sentence, the trial court's alleged failure to allow voir dire on the penalty range was not error.

The judgment of the Jefferson Circuit Court is affirmed.

STEPHENS, C.J., and COMBS, LAMBERT, SPAIN and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents in part by separate opinion.

LEIBSON, Justice, dissenting.

Respectfully, I dissent from the portion of the Opinion affirming the burglary conviction.

The Majority Opinion finds Emergency Protective Orders (EPO) "are relevant as evidence of motive or state of mind, and also as part of the immediate circumstances bearing on the crimes charged," and I agree. But after this evidence had been admitted, the appellant was then entitled to his requested admonition to the effect that the existence of an outstanding EPO does not prove that the appellant had previously committed a crime.

In *Matthews v. Commonwealth*, 709 S.W.2d 414 (1985), we held that a "sexual abuse warrant had a direct bearing on the appellant's state of mind at the time" the victims were killed. However, the appellant in *Matthews* did not offer an instruction to the jury, as was done by defense counsel in this case, that the warrant "could be considered only as bearing on the accused's state of mind and not as proof of guilt of the offense charged." Since none was requested, in *Matthews* we perceived no error in the lack

of such an instruction. This appellant did request such an instruction and was entitled to his requested admonition.

There is another far more significant reason why the burglary conviction should be reversed. The trial court's answer to the question the jury submitted during its deliberation was not "a correct statement of the law," as the Majority Opinion states. On the contrary, it was seriously misleading. The jury had been instructed on first-degree burglary as well as first-degree criminal trespass. The jury then asked this question:

"Under Instruction # 1, *section a* [the burglary instruction] the phrase "with intent to commit a crime," can you tell us if this refers to the crime of coming onto the property or the crime of assault?"

The trial court responded to their question: "To commit any crime." This response could be fairly understood by the jury to mean the same evidence introduced to prove criminal trespass, without any additional facts, would prove the intent element in the burglary charge. Such is not the case, and these circumstances render unreliable the jury's verdict on the burglary charge.

The burglary statute, KRS 511.020, reads in pertinent part: "A person is guilty of burglary in the first degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building . . . ." The trial court's response to the jury's question implies that either knowing it was a crime to come onto the property, because to do so violated the EPO, or intending to commit the crime of assault would satisfy the intent requirement.

For the "intent" element of the burglary statute to have been satisfied in this case, "with the intent to commit any crime" must be understood to refer to intent to commit a crime *in addition to* criminal trespass. Criminal trespass is committed by "knowingly entering or remaining unlawfully in a building," the first element in the burglary statute. Since anytime someone "knowingly enters or remains unlawfully in a dwelling" that person would necessarily have the intent to commit the crime of coming onto the property, the Majority Opinion has effective-

ly written the intent requirement out of the burglary statute by declaring the trial court's answer "to be a correct statement of the law".

Further, if the intent requirement is written out of the burglary statute in this fashion, any time there is a criminal trespass and the trespasser happens to be armed, or causes physical injury to someone who is not a participant in the crime, or uses or threatens to use a dangerous instrument on a non-participant, that person would be guilty of first-degree burglary without the Commonwealth having to prove "the intent to commit a crime" otherwise required as the first element for burglary.

The Majority further opines that it is immaterial whether the jury's question indicated they considered the violation of an EPO as evidence sufficient to prove the element of intent to commit a crime, because "even if one believes that appellant did not have the requisite intent as he entered the house, one could surely believe he subsequently formed the intent necessary to be guilty of the crime of burglary." The Majority believes the appellant "may be convicted of the crime of burglary providing the jury finds that he knowingly entered the building with the intent to commit a crime or that he remained unlawfully in the building with intent to commit a crime." While this last quoted statement is true as an abstraction, it has no concrete application to present circumstances.

As stated in 12A C.J.S. *Burglary* § 41 (1980):

"To constitute burglary the requisite specific intent must exist at the time of the breaking and entry, or entry, or remaining . . ."

According to the Model Penal Code, § 221.1 (1980), from which our burglary statute (KRS 511.020) is taken, the phrase encompassing one who unlawfully remains upon property is included in burglary statutes to reach those situations where the person enters lawfully (i.e., with license to do so) but then remains after it is lawful to do so in order to commit a crime. Examples given in the Model Penal Code include someone who enters a bank lawfully but hides until it

closes, or someone who comes into a home as a guest and then hides in a closet until after the host thinks all the guests are gone. The Commentary to KRS 511.020 bears this out:

It [the requirement that a burglar must knowingly enter or remain unlawfully] expands the traditional burglary offense through a provision that any person *who enters property under privilege* may still commit an offense of burglary if he remains on that property beyond the termination of his privilege. (Emphasis added). KRS 511.020, Commentary (iii) (1974).

In *Tribbett v. Commonwealth*, Ky., 561 S.W.2d 662 (1978), we correctly interpreted this statute. The defendant was invited into the victim's home where he killed the victim and then made off with his property. The defendant was in the victim's home lawfully, and the jury was correctly instructed to find him guilty of burglary only if thereafter he remained in the victim's dwelling without permission, in order to commit a crime. Upon the death of the licensor/victim, the defendant's license to be on the premises ceased. "Therefore, when [he] failed to leave, [he] remained unlawfully upon the premises within the meaning of the burglary statute. KRS 511.020, Commentary (iii) (1974)." *Id.* at 664. When the defendant then made off with the victim's property, he committed a burglary.

If someone enters *lawfully* but remains unlawfully, like the defendant did in *Tribbett,* the "intent to commit a crime," as an element of burglary, must be determined at the time that person unlawfully remains. If the initial entry is *unlawful,* as it was in this case, the "intent to commit a crime" element must be determined as of the time of entry. To hold otherwise would mean *every* crime committed in a building is a burglary as well as the offense committed, since in *every* case "intent to commit a crime" exists at the instant when the crime occurs.

The jury asked whether the phrase "with intent to commit a crime" referred to the crime of coming onto the property or the crime of assault. Since the appellant's intent to commit a crime must be determined at the time he unlawfully entered the building, this

question, by its nature, discloses that the jury was debating whether the violation of the EPO was evidence which in and of itself established a crime rendering the defendant guilty of burglary. In answer to the jury's question, they should have been instructed: "with intent to commit a crime, as used in the burglary instruction, refers to the crime of assault and *not* to any offense committed by unlawfully coming onto the property."

Although violation of an EPO of which the appellant was aware indicated he "knowingly" entered the building "unlawfully," appellant was not guilty of burglary unless the jury believed that, at the time he entered unlawfully, he intended to commit a crime after he got inside.

For these reasons, I would reverse the burglary conviction and remand this part of the case.