**Dallas M. HEDGES, Jr., Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 95–SC–999–DG.**

Supreme Court of Kentucky.

Nov. 21, 1996.

Rehearing Denied Feb. 27, 1997.

Kimberly A. Brooks, Covington, for Appellant.

A.B. Chandler, III, Attorney General, Ian G. Sonego, Assistant Attorney General, Frankfort, for Appellee.

STEPHENS, Chief Justice.

Appellant, Dallas M. Hedges, appeals from a judgment of the Court of Appeals affirming the judgment of the Fayette Circuit Court which found him guilty of Burglary in the Second Degree. We granted discretionary review to determine whether it was proper for the trial judge to overrule appellant's motion for a directed verdict on the burglary charge. After a careful review of the case, we reverse the decision of the Court of Appeals.

In 1994, Dana Hedges, appellant's estranged wife, was living in an apartment in Lexington. Dana and appellant were separated, but remained legally married, and due to previous problems between them, appellant was under a Domestic Violence Emergency Protective Order (DVO). According to that order, appellant was forbidden from committing acts of violence against Dana or to dispose of or damage the couple's property. The DVO did not contain a "no contact" provision. In fact, appellant frequently had contact with Dana regarding their child, and

with her permission had spent the night at Dana's residence on several occasions.

On the night of February 20, 1994, appellant went to Dana's apartment seeking entry in order to use her telephone. He apparently had been drinking when he arrived. Dana acknowledged at trial that she was hesitant about admitting him because a male friend of hers, Carl Jeter, was there. After instructing Jeter to wait in the bedroom with the door locked, Dana allowed appellant inside the apartment. Hearing noise coming from the bedroom, appellant went to investigate. As he forced the bedroom door open, he saw Jeter diving out the window. Incensed upon discovering another man in his wife's bedroom, appellant proceeded to break a fish tank, a microwave oven, and a vase—all of which was property owned jointly by Dana and appellant. Meanwhile, Dana ran to a neighbor's house to contact the police. When she returned to the apartment, appellant, still upset, grabbed her by the neck, but caused her no physical injury.

Following this incident, appellant was indicted for First Degree Burglary and for being a Persistent Felony Offender in the Second Degree (PFO II). During his trial in Fayette Circuit Court, appellant's counsel moved for a directed verdict at the close of the Commonwealth's case maintaining that no weapon was used by appellant and no physical injury was sustained by Dana. The motion was overruled. Ultimately, the jury returned a verdict of guilty of Burglary in the Second Degree. Because appellant was found to be a PFO II, his recommended five year sentence was enhanced to ten years.

The Court of Appeals' majority affirmed the trial court's overruling of the directed verdict motion concluding that the evidence was sufficient to establish the elements of second-degree burglary. The court reasoned that appellant, after entering the dwelling with Dana's permission, remained there unlawfully and with the intent to commit a crime. The court asserted that it was irrelevant whether Dana initially allowed appellant to enter her apartment. It further maintained that according to *McCarthy v. Commonwealth*, Ky., 867 S.W.2d 469, 471 (1993), the only requirement that needed to be established was that appellant remained unlawfully. We disagree.

■ The elements of second degree burglary as set out in KRS 511.030(1) are as follows:

> A person is guilty of burglary in the second degree when, with the intent to commit a crime, [he] knowingly enters *or* remains unlawfully in a dwelling.

Thus, according to KRS 511.030(1) we must first analyze whether appellant entered Dana's apartment with the intent to commit a crime. The Court of Appeals concluded that the specific intent to commit a crime element of KRS 511.030(1) was satisfied. Its conclusion seems to be based on two theories: that appellant committed an assault against his wife or that violation of the DVO, in and of itself, constituted a crime.

First, the facts in the present case do not support a finding that an assault occurred. Both first and second degree assault require that a weapon or dangerous instrument be used and that serious injury result. KRS 508.010, 508.020. In this case, no weapon or dangerous instrument was used. Moreover, Dana's own testimony and the police investigation of the incident support the conclusion that no injury resulted. If evidence of an assault existed, then appellant surely would have been so prosecuted. Thus, first and second degree assault are clearly not applicable in the instant case.

In addition, fourth degree assault results when another "intentionally or wantonly cause[s] physical injury to another person, or with recklessness he cause[s] physical harm to another person by means of a deadly weapon or a dangerous instrument." KRS 508.030. The facts in the present case do not support this contention, either. Therefore, the "intent to commit a crime therein" element of KRS 511.030(1) cannot be satisfied in the present case.

■ Second, the Court of Appeals cites *McCarthy, supra.*, to support its assertion that a violation of the DVO may be properly used to show intent to commit a crime. We disagree. As 12A C.J.S. Burglary § 41 (1980) states:

To constitute burglary the requisite specific intent must exist at the time of the breaking and entry, or entry, or remaining . . .

The mere violation of the DVO without intent to commit an independent crime, is impermissible to support a finding of burglary. Justice Leibson appropriately affirmed this idea in his dissenting opinion in *McCarthy:*

> For the "intent" element of the burglary statute to have been satisfied in this case, "with the intent to commit any crime" must be understood to refer to intent to commit a crime in addition to criminal trespass. Criminal trespass is committed by "knowingly entering and remaining unlawfully in a building," the first element in the burglary statute. Since anytime someone "knowingly enters or remains unlawfully in a dwelling" that person would necessarily have the intent to commit the crime of coming onto the property, the Majority Opinion has effectively written the intent requirement out of the burglary statute . . . .

*Id.* at 472.

Moreover, *McCarthy, supra.,* is clearly distinguishable from the instant case. The facts in *McCarthy* involved a husband who assaulted his wife while subject to an emergency protective order which prohibited him from coming about his wife or onto her premises. *Id.* at 470. Despite the EPO, McCarthy went to his wife's home. *Id.* When his wife denied him entry, he kicked the door down and entered the dwelling. *Id.* A fight eventually erupted between McCarthy and his wife and, as a result, his wife sustained injuries. *Id.*

In this case, the Court of Appeals' analysis of KRS 511.030(1) has improperly expanded *McCarthy* beyond its logical conclusion. In *McCarthy,* there was significant evidence, other than the violation of the EPO, to support the contention that McCarthy intended to commit a crime when he went to his wife's residence. Unlike appellant's case, when McCarthy's wife refused him entry, he entered her apartment anyway by unlawfully kicking in the door. Additionally, the EPO obtained against McCarthy clearly contained a "no contact" order, thus making the entry, whether forcible or not, unlawful. There is no such provision in appellant's DVO.

Violation of a DVO, without other evidence sufficient to show intent to commit a crime, may not be used to satisfy the elements of burglary. If it were otherwise, every indoor crime (or intended crime) would constitute burglary. Thus, while violation of a DVO can constitute criminal conduct, the evidence in this case indicates that appellant did not go to Dana's apartment with the intent to violate the DVO.

■ Likewise, even if appellant had entered the apartment with the intent to commit a crime, KRS 511.030(1) further requires us to determine whether appellant knowingly entered or unlawfully remained in the apartment. In *Tribbett v. Commonwealth,* Ky., 561 S.W.2d 662, 664 (1978), this Court interpreted KRS 511.020, involving first degree burglary, to hold that when a criminal defendant failed to leave the premises to which he had lawfully been admitted, but subsequently remained without permission, as a result of the licensor's death, the requirement for burglary was met.

No evidence has been cited before this Court or is in the record to show that appellant knew his permission to be inside the apartment had been withdrawn. While such a privilege could be revoked by conduct other then express words, no such conduct resulted in this case. Dana willingly allowed appellant to enter her apartment. While Dana did testify that she asked appellant what he was doing and asked him to stop damaging their property, this is not sufficient to constitute a revoking of the privilege she gave to appellant to be in the apartment.

■ Furthermore, no argument has been advanced to counter appellant's contention that even if revoked, the intent to commit a crime was not present at the time of revocation. It is more logical to conclude that if Dana did revoke her permission, it was only after appellant had already destroyed their property. Thus, no intent to commit a crime existed at the time Dana revoked her permission to be in the apartment, if she revoked her permission at all.

■ Concluding that appellant did not unlawfully remain or have the intent to commit a crime in his wife's apartment, we must now move on to the ultimate issue of whether the trial judge improperly overruled appellant's motion for a directed verdict. Endorsing the principles set forth in *Commonwealth v. Sawhill,* Ky., 660 S.W.2d 3 (1983), and *Trowel v. Commonwealth,* Ky., 550 S.W.2d 530 (1977), this Court in *Commonwealth v. Benham,* Ky., 816 S.W.2d 186 (1991), restated the standard for a directed verdict in criminal cases. On appellate review we specifically stated the standard as, "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then is the defendant entitled to a directed verdict of acquittal." *Id.* at 187.

The Commonwealth asserts that appellant's directed verdict motion was not properly preserved, because appellant moved for a directed verdict on first, instead of second, degree burglary, and did not object to the jury instructions on second degree burglary. This Court has noted with regard to a motion for a directed verdict of acquittal that if the defendant could be convicted of a lesser included offense or accomplice theory, then the proper method for obtaining relief is to object to the jury instructions. *Campbell v. Commonwealth,* Ky., 564 S.W.2d 528, 530 (1978).

Appellant's counsel properly moved for a directed verdict at the close of the Commonwealth's case, and at the close of appellant's case, preserving appellant's argument that the evidence was insufficient to submit to the jury. Appellant sought a directed verdict on the basis that there could be no theory under which he could be found guilty of burglary, not acquittal as in *Campbell.* Thus, the directed verdict extended to lesser included offenses, and separate objection to the jury instructions was not necessary.

To prevent any misunderstanding, it is important to say what this case does not hold. We do not hold or suggest that if one is lawfully admitted to the premises of another, he thereafter has carte blanche to engage in criminal conduct. Not at all. If a lawfully admitted person commits assault, or theft, or any other crimes, he may be prosecuted for those crimes.

At common law, burglary was the unlawful entry into the dwelling of another in the nighttime with the intent to commit a crime therein. Because of the life-threatening nature of such an act, the crime of burglary was punished more severely than mere theft. Modern statutes which proscribe burglary are without many of the common law elements, however, this does not turn every criminal act committed on the property into a burglary. At a minimum, before there is a burglary, there must be a prior intent to commit a crime; intent which was not proven, here.

■ What this opinion does hold is that misconduct or criminal conduct does not become burglary solely by reason of commission of the act on the property of another. To hold otherwise would be to distort the crime of burglary into meaninglessness. Consequently, it would have been clearly unreasonable for a jury to have found appellant guilty of burglary under the set of facts in this case. Thus, the Court of Appeals and the Fayette Circuit Court erred in ruling that there was sufficient evidence to overrule appellant's motion for a directed verdict and, accordingly, the judgments of both courts should be reversed.

BAKER, LAMBERT and STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents and files a separate dissenting opinion.

GRAVES and KING, JJ., join in this dissenting opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because there was sufficient evidence to support the decision of the jury that Hedges violated the burglary statute.

This case is indistinguishable from the reasoning and result of *McCarthy v. Commonwealth,* Ky., 867 S.W.2d 469 (1994). In *McCarthy, supra,* this Court affirmed a first degree burglary conviction because the defendant unlawfully remained in the dwelling of his estranged wife.

Here, Hedges violated a Domestic Violence Emergency Protection Order which is itself a crime pursuant to KRS 403.763(2). Hedges had been prohibited from committing any violence against his estranged wife and from damaging the property of the couple.

The evidence supports the inference by the jury that Hedges intentionally violated the DVO, lied to the wife about wanting to make a telephone call and instead searched for a visitor in the apartment or that after he entered the apartment he formed the intent to damage property on the premises or cause her physical injury, all of which was clearly beyond the purview of the consent to enter given by the wife.

As noted in *McCarthy,* burglary is an invasion of the possessory right of another and extends to a spouse. *See also Matthews v. Commonwealth,* Ky., 709 S.W.2d 414 (1986).

The crime of second degree burglary was committed when Hedges remained in the apartment with the intent to commit a crime, to wit: the destruction of the property and the assault on her person. Police at the scene testified that they saw red marks on the victim's neck and throat. She testified that Hedges grabbed her by the neck and shoved her against the wall. All the elements of second degree burglary were met. There was no error in determining that there was sufficient evidence to deny a motion for directed verdict.

I would affirm the conviction in all respects.

GRAVES and KING, JJ., join in this dissenting opinion.