Calvin FLETCHER, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 1999–CA–002621–MR.

Court of Appeals of Kentucky.

March 2, 2001.

Discretionary Review Denied
by Supreme Court Nov. 14, 2001.

Paul J. Neel, Louisville, for appellant.

A.B. Chandler, III, Attorney General,
Elizabeth A. Heilman, Assistant Attorney
General, Frankfort, for Appellee.

Before HUDDLESTON, JOHNSON
and SCHRODER, Judges.

## OPINION

JOHNSON, Judge.

Calvin Fletcher has appealed from a final judgment and sentence of imprisonment entered by the Martin Circuit Court that convicted him of burglary in the second degree [1] and assault in the fourth degree.[2] Having concluded that there was sufficient evidence to support a finding by the jury that Fletcher knowingly and unlawfully entered the dwelling with the intent to commit a crime, we hold that the trial court did not err in denying his motion for a directed verdict of acquittal. Hence, we affirm.

On November 23, 1998, the Martin County Grand Jury indicted Fletcher for the offenses of burglary in the second degree and assault in the fourth degree arising out of an assault on Kelly Click which occurred at his home on October 6, 1998. At trial, Click, who was 17 years old when he was assaulted, testified concerning the events of that night: He was home alone and talking to his girlfriend on the telephone, when he heard someone, who was

1. Kentucky Revised Statutes (KRS) 511.030.

2. KRS 508.030.

later determined to be Fletcher, outside "yelling around, screaming and stuff." Click looked out a window and saw a man outside "cussing my house all to[ ] pieces." The man was about 15 feet from the window and it was still light enough for Click to see him. Click returned to the phone and asked his girlfriend to have her father come to his house. Click then heard a knocking on his door. When he went to the door and looked out the door's window, Click saw Fletcher "standing right there in the door," knocking "casually like." Fletcher told Click to open the door, and he did. Click testified that, "[a]s soon as the door came open, I got hit and after that I woke up out in the driveway."

According to the testimony of Everett Kirk, Click's girlfriend's father, when he arrived at Click's house he found Click unconscious in the driveway. He awoke Click and asked him what happened. Click described the man who had struck him as having a beard and being "a little, fat, chubby man." Click stated that he had "never seen him before in my life." Kirk told Click, "it's probably Calvin Fletcher."

Click had knots on his forehead and scratches on his side. After an ambulance that Click's girlfriend had called arrived, Click was checked out by the ambulance attendants. Since he did not believe his injuries to be serious, Click decided not to go to the hospital. The police also arrived and took Click to the nearby residence of Fletcher's father. While the police did not find Fletcher outside his father's house, they did not search the inside of the house.

The next day Click, his mother and stepfather went to the county attorney's office to swear out a warrant. After Click described the person who had assaulted him,

an employee in the county attorney's office said that the description matched Fletcher. During that time, Fletcher's wife entered the county attorney's office. She and Fletcher had come to the courthouse because they had heard from Fletcher's father that the police were looking for him. Click's mother and stepfather went into the hallway where they confronted Fletcher. After Click went into the hallway, he identified Fletcher as the man who had assaulted him.

At trial, Fletcher testified to an alibi defense: He claimed that he had spent the evening hours of October 6, 1998, moving into a new apartment and his alibi was supported to varying degrees by his wife, his landlord and a couple of friends. Fletcher's father testified that on October 6 his son was not at his house, either before or after the time of the assault.

The jury found Fletcher guilty on both counts; and on October 22, 1999, the trial court sentenced Fletcher to prison for a term of 10 years. This appeal followed.

■ Fletcher claims that the trial court erred when it denied his motion for a directed verdict of acquittal that had been based on his assertion that the Commonwealth had failed to prove he had unlawfully entered Click's house. Our standard of review of a denial of a directed verdict of acquittal is well-settled and is stated in *Commonwealth v. Benham*,[3] as follows: "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal."

Under KRS 511.030(1): "[a] person is guilty of burglary in the second degree

---

**3.** Ky., 816 S.W.2d 186, 187 (1991)(quoting *Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3 (1983)).

when, with the intent to commit a crime, he knowingly *enters* or remains *unlawfully* in a dwelling" [emphasis added]. "A person 'enters or remains unlawfully' in or upon premises when he is not privileged or licensed to do so."[4] The Official Commentary to KRS 511.020 points out that the "enters or remains unlawfully" requirement as defined in KRS 511.090(1) is intended to accomplish the following:

(i) It eliminates "breaking" as an element of the offense of burglary. . . .

(ii) It emphasizes the unlawfulness of an intrusion. . . . "[T]he true essence of . . . burglary should be *intrusion* into premises without license or privilege" [emphasis original]. With the requirement that an intrusion be unlawful, burglary is not committed by servants and invited guests who enter buildings under privilege even though they have intention to commit crime while there.

(iii) It expands the traditional burglary offense through a provision that any person who enters under privilege may still commit an offense of burglary if he remains on that property beyond the termination of his privilege.

Thus, the critical factual question is whether Fletcher, or more precisely Fletcher's hand, unlawfully entered Click's dwelling.

The evidence most favorable to the Commonwealth established that Click was standing inside the doorway when the blow from Fletcher landed; he had not gone outside. Click testified there was no way he could have been hit in the face without Fletcher's hand entering the house through the open doorway. However, Fletcher contends that the Commonwealth's evidence was insufficient to prove the elements of burglary because he claims he did not enter Click's house *unlawfully*. Fletcher argues that since Click claimed that he was knocking on the door "casually," and that since Click opened the door after Fletcher told him to, Click's opening of the door constituted an invitation to Fletcher to enter.

■ Fletcher correctly states that the law provides that a burglary has not occurred when a person has lawfully entered a building and subsequently commits a crime, even if he had the intention to commit a crime at the time he entered the building.[5] Thus, even if a person enters a building with the intent to commit a crime after he is inside the building, a burglary does not occur if he gained entry to the building by lawful means, provided his lawful presence was not terminated prior to commission of the crime.[6]

■ Accordingly, Fletcher argues that the issue before us is whether Click's opening of the door constituted an invitation, either explicit or implicit, to him to enter the dwelling.[7] Since there was no

---

4. KRS 511.090(1).

5. *See* Official Commentary to KRS 511.020 at (ii); and *see also Hedges v. Commonwealth,* Ky., 937 S.W.2d 703, 706 (1996), where husband, while under a Domestic Violence Order was allowed by his estranged wife to enter her apartment, did not commit burglary in the second degree when he destroyed some of her property because under the evidence husband did not go to wife's apartment "with the intent to commit a crime."

6. *Robey v. Commonwealth,* Ky., 943 S.W.2d 616, 620 (1997); *but see Tribbett v. Commonwealth,* Ky., 561 S.W.2d 662 (1978).

7. It is tempting to state that no invitation to enter a dwelling could include an entry for the purpose of committing an assault. But, as discussed *supra* on page 923, even if a person enters a building intending to commit a crime after he is inside the building, he has not committed a burglary if he gained entry lawfully, unless that permission is revoked. The dissents in *Robey, supra,* failed to persuade the majority of the Supreme Court that

evidence to support a finding that Click extended an explicit invitation to Fletcher to enter the dwelling, the issue is narrowed to the question of whether by opening the door Click extended an implicit invitation to him to enter. Obviously, since the building was a home and not a store or public park, and since Click did not know Fletcher, he cannot claim that he was given an implicit invitation to enter Click's house from custom or usage of the premises. Thus, Fletcher's only plausible argument must be based on Click's conduct; i.e., that Click's opening of the door, and no more, was an implicit invitation to Fletcher to enter the home.

The Commonwealth points out that Fletcher has cited no legal authority to support his position that the mere opening of a door by an occupant constitutes an explicit or implicit invitation to a person to enter a building. The Commonwealth claims the cases cited by Fletcher are distinguishable because in those cases, unlike the case *sub judice*, the defendants had an explicit invitation to enter the building.

The evidence most favorable to the Commonwealth establishes that Fletcher knocked on the door and demanded that Click open the door, which he did. There was no evidence that Click made any kind of utterance, gesture or movement that could reasonably constitute an invitation, either explicit or implicit, to Fletcher to enter the home. Click did nothing except open the door; and Fletcher immediately assaulted him. As the Commonwealth argues, it would be ludicrous to conclude that the mere opening of a door by an occupant of a private residence could be reasonably construed as an invitation to enter the residence. Such a result would imperil the cherished and time-honored principle that the home is a bastion of privacy and an occupant's rights therein would be seriously jeopardized.

Since Click did not extend either an explicit or implicit invitation to Fletcher to enter the dwelling, Fletcher's entry into the dwelling by swinging his hand through the doorway for the purpose of assaulting Click was unlawful. Accordingly, all the elements of burglary in the second degree were proved and the judgment of the Martin Circuit Court is affirmed.

ALL CONCUR.

---

Robey's " 'license ceased and the privilege to be upon the premises lapsed' when he formed the intention to rape his host." (Cooper, J., dissenting at 620–21, quoting *Tribbett v. Commonwealth*, Ky., 561 S.W.2d 662, 664 (1978)).