COMMONWEALTH of Kentucky, Appellant,

v.

Larry PARTEE, Appellee.

No. 2002–SC–0111–DG.

Supreme Court of Kentucky.

Dec. 18, 2003.

Albert B. Chandler III, Attorney General of Kentucky, Dennis W. Shepherd, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellant.

Elizabeth Shaw, Richmond, Counsel for Appellee.

LAMBERT, Chief Justice.

Appellee was indicted for the offenses of burglary in the third degree, theft by unlawful taking of property of a value of $300 or more, and of being a persistent felony offender (PFO) in the first degree. He was found guilty of burglary in the third degree, but not guilty of theft by unlawful taking. Appellee waived jury sentencing in exchange for dismissal of the PFO charge, and he was sentenced to a term of five years imprisonment. We granted discretionary review to decide whether there was sufficient evidence to submit the burglary charge to the jury.

On Sunday, May 17, 1998, a silent alarm sounded at the Park Federal Credit Union in Louisville, Kentucky. Officer Childers responded. When the officer arrived, he saw Appellee exiting the parking lot. As Officer Childers pulled into the lot, Appellee continued to move forward, so the officer turned around and followed. Appellee then stopped the vehicle, began to back up, and made an evasive turn around the credit union. During this pursuit, Officer Childers called for back up, continued the pursuit, and managed to cut off Appellee. Upon questioning, Officer Childers asked Appellee if he was aware of the activation of the silent burglar alarm at the credit union. Appellee responded that he was an office cleaner and that he had a key and the security code to the building. The officer observed that Appellee's pockets were bulging and heavily weighted.

Officer Bivins, a second officer who responded to the silent alarm, observed through the passenger side window of Appellee's car a large quantity of coins. Officer Childers asked Appellee to empty his pockets onto the hood of the car and it was revealed that his pockets were full of coins.

When asked about the unusual quantity of coins on his person, Appellee told the officers that he collected coins and that it was not unusual for him to carry them around. It was determined that Appellee was in possession of more than $100 in coin.

At trial, the owner of the cleaning company where Appellee was employed testified that he had assigned a two-person crew that included Appellee to clean the credit union at night after closing. On Fridays the credit union is open late. Therefore, it was normal for the cleaning crew to clean on Saturdays. The owner also stated that it was unusual for the cleaners to freely come and go.

A Park Federal Credit Union executive also testified at trial. He said that a coin counting machine at the credit union was audited for the time period that covered the close of business Friday to the time the alarm sounded on Sunday. From the audit, it was discovered that approximately $843 was missing from the machine. There was also testimony that the security camera installed to record activity at the coin counting machine was pointed toward the ceiling on the occasion in question, and that earlier that week the same camera had been mysteriously found pointing upward. The officers and the credit union executive both testified that from the security tape of that day, Appellee was seen entering the building and performing some cleaning duties. There was also evidence that Appellee had come and gone from the credit union on three different occasions during the weekend.

At the close of the Commonwealth's evidence, Appellee moved for a directed verdict on the burglary charge on grounds that he had a right to enter the credit union because he worked there as a cleaner. The trial court overruled the motion and the defense rested without putting on any evidence. The jury found Appellee

guilty of burglary in the third degree, but not guilty of theft. Appellee waived jury sentencing, the first-degree PFO charge was dropped, and the court imposed a sentence of five years imprisonment.

The Court of Appeals reversed on grounds that Appellee should have had a directed verdict on the third degree burglary charge. The Court of Appeals placed great emphasis on Appellee's permission to be on the premises and held that in the absence of a revocation of permission to enter, Appellee could not be convicted of burglary.

> In the present case, Partee had permission from the owner of the premises and his employer to be in the building on the night in question, regardless of whether he formed the intent to steal the coins prior to or after entering the building. Since there was no evidence that said permission was revoked before commission of the theft, we must conclude that Partee entered the building lawfully and, thus, he could not be convicted of burglary. Accordingly, the lower court erred in failing to so enter the directed verdict.[1]

The crime of which Appellee was convicted, burglary in the third degree, is as follows: "A person is guilty of burglary in the third degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building."[2] The Commonwealth contends that while Appellee may have gained lawful entry into the credit union, his right to be there was revoked when he formed the intent to commit a crime. Alternatively, the Commonwealth argues that Appellee's entry was unlawful from the outset because he possessed the requisite criminal intent when he entered the building. Under this view, the crime of burglary would be complete, despite facially rightful entry, whenever one enters or remains while possessing the requisite criminal intent. Appellee insists that he cannot be guilty of burglary in the third degree because his entry was rightful by virtue of his status as an employee of the cleaning company and his rightful possession of a key and the security code. Metaphorically, Appellee states, "When the maid steals the silver, it is theft, not burglary."

In a number of cases this Court has struggled to arrive at a consistent conceptualization of burglary whereby the crime is reserved for appropriate circumstances. We have sought to avoid an analysis that results in burglary being used improperly to compound other independent criminal acts. In *McCarthy v. Commonwealth*[3], we affirmed a burglary conviction where the evidence showed that Appellant entered the victim's home (his estranged wife) despite the existence of an emergency protective order requiring him to stay away. Upon being denied entry, he kicked down the door and entered whereupon a fight erupted between Appellant and his wife in which she sustained injuries. We stated the rule of law with respect to what the jury must find and what must be supported by the evidence as follows:

> While appellant contends he went to the house to confer with his wife and not with the intent to commit an assault, he may be convicted of the crime of burglary providing the jury finds that he knowingly entered the building with intent to commit a crime or that he remained unlawfully in the building with intent to commit a crime. Therefore, even if one believes that appellant did not have the requisite intent as he en-

---

**1.** Op. at 576.

**2.** KRS 511.040.

**3.** Ky., 867 S.W.2d 469 (1993).

tered the house, one could surely believe he subsequently formed the intent necessary to be guilty of the crime of burglary.[4]

Likewise, in *Fugate v. Commonwealth*[5], this Court affirmed the denial of a motion for directed verdict on the burglary charge where it appeared that Appellant had permissively entered the victim's trailer for the purpose of a social visit and a drug transaction. We held that the fact of authorized entry did not provide a basis for a directed verdict on the burglary charge because his license to enter ceased upon commission of the crimes. Nevertheless, we observed that after the disputed drug transaction in which Appellant shot and killed the victim, there was evidence that he ransacked the trailer and stole the victim's wallet and cash.

In *Tribbett v. Commonwealth*[6], Appellant was invited upon the victim's premises. A co-conspirator murdered the victim and his property was unlawfully taken. Affirming the burglary conviction, we said

> The jury was not instructed on the "unlawful entry" aspect of burglary. It was instructed to find him guilty only if he remained in Perciful's dwelling without permission. Tribbett and his two companions were invited by Perciful into his home. As such they were mere licensees. Upon the death of the licensor, the license ceased and the privilege to be upon the premises lapsed. Therefore, when they failed to leave, they remained unlawfully upon the premises within the meaning of the burglary statute.[7]

In *Hedges v. Commonwealth*,[8] this Court reversed a burglary conviction and criticized the Court of Appeals for what we characterized as an improper expansion of *McCarthy*. In *Hedges*, we formulated a more narrow construction of the statute relying in part on common law principles to prevent every indoor crime from being burglary.

> Modern statutes which proscribe burglary are without many of the common law elements, however, this does not turn every criminal act committed on the property into a burglary. At a minimum, before there is a burglary, there must be a prior intent to commit a crime; intent which was not proven, here.

> What this opinion does hold is that misconduct or criminal conduct does not become burglary solely by reason of commission of the act on the property of another. To hold otherwise would be to distort the crime of burglary into meaninglessness.[9]

As the forgoing cases demonstrate, there has been an ebb and flow of our views with respect to the breadth of the crime of burglary. Nevertheless, in each instance, we have required some evidence of intent to commit a crime prior to unlawful entry or prior to remaining unlawfully, and the mere fact of the crime is not sufficient.[10] Evidence of criminal intent is the key to proper application of the burglary statutes.

In the instant case numerous facts convincingly support the Commonwealth's view that the burglary charge was proper-

4.  *Id.* at 471.

5.  Ky., 993 S.W.2d 931 (1999).

6.  Ky., 561 S.W.2d 662 (1978).

7.  *Id.* at 664 (citations omitted).

8.  Ky., 937 S.W.2d 703 (1996).

9.  *Id.* at 707.

10.  *Id.* at 706.

ly submitted to the jury.[11] It is doubtful that Appellee, despite having a key and the security code, was entitled to be on the premises. His license to be there was sufficiently circumscribed to entitle the jury to believe that his third visit there on the weekend in question was without any license. From the evidence, based on Appellee's opportunity and his possession of some of the missing coins, the jury could have believed that Appellee mispositioned the security camera to prevent detection, and that he made multiple trips to the credit union to carry away the large quantity of coins determined to be missing. Appellee's departure from the normal practice of going to the credit union with a co-worker allowed the jury to infer that he intended to commit a crime. His attempted flight in the parking lot supported an inference that he committed a crime while on the credit union premises. The jury was instructed that Appellee could be convicted if he entered or remained unlawfully on the premises, with the requisite intent, and there was ample evidence to support a conviction under either prong of the statute.

Finally, we call attention to KRS 511.090 and note that it does not apply in this case as the credit union premises were not "open to the public." Thus, Appellee's license or privilege, if any, had to derive from some other source.

For the foregoing reasons, we reverse the Court of Appeals and reinstate the final judgment of the Jefferson Circuit Court.

COOPER, GRAVES, and WINTERSHEIMER, JJ., concur.

KELLER, J., concurs in result only because the evidence was sufficient for the jury to conclude beyond a reasonable doubt only that Appellee unlawfully entered the bank with the intent to commit a crime.

JOHNSTONE, J., dissents by separate opinion in which STUMBO, J., joins.

JOHNSTONE, Justice Dissenting.

Respectfully, I dissent. KRS 511.040 provides as follows: "A person is guilty of burglary in the third degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building." Thus, the statute provides two elements to the crime: 1) having the intent to commit a crime, and 2) entering or remaining unlawfully. This is not an either/or situation; rather, the Commonwealth must prove *both* elements.

Presumably, the crime that Appellee intended to commit was theft by unlawful taking of property over $300. Ironically, the jury acquitted Appellee of the theft charge. More difficult for the majority to deal with is the issue of whether Appellee entered or remained unlawfully in the credit union building. As the Court of Appeals noted, the testimony of the Commonwealth's own witnesses established that there was no question that Appellee had permission to be in the credit union facilities on the weekend in question to clean the building. Further, the president of the credit union confirmed that permission to be in the building had not been revoked or withdrawn.

Yet, the majority opines that "[i]t is doubtful that Appellee, despite having a key and the security code, was entitled to be on the premises. His license to be there was sufficiently circumscribed to en-

---

**11.** *See Commonwealth v. Benham,* Ky., 816 S.W.2d 186 (1991) and *Commonwealth v. Sawhill,* Ky., 660 S.W.2d 3 (1983).

title the jury to believe that his third visit there on the weekend was without any license." *Op.* at 576. Humbly, I would submit that there is no authority for such a position. Nor are any of the cases cited in the majority opinion for the theory of implied revocation of permission on all fours with the case at bar.

The majority states that: "Metaphorically, Appellee states, 'When the maid steals the silver, it is theft, not burglary.'" *Op.* at 574. Appellee was not referring to a metaphor, but the Official Commentary to KRS 511.020 which contains the following language:

> With the requirement that an intrusion be unlawful, burglary is not committed by servants and invited guests who enter buildings under privilege even though they have intention to commit crime while there.

The crux of this case is not whether Appellee had the intent to commit a crime on the premises. The key is whether he entered or remained in the building unlawfully. As we noted in *Robey v. Commonwealth*, Ky., 943 S.W.2d 616, 620 (1997):

> [E]ven if the defendant did enter the apartment with the intent to commit a crime, the burglary statute further requires that the defendant either knowingly entered or unlawfully remained in the apartment, and that he then committed an independent crime satisfying the elements of the burglary offense, after his permission to be on the property had been withdrawn. Since no evidence was cited to show that the defendant knew his permission to be in the apartment had been withdrawn at the time he destroyed the property, he was entitled to a directed verdict.

Former Chief Justice Stephens stated in *Hedges v. Commonwealth*, Ky., 937 S.W.2d 703, 707 (1996):

What this opinion does hold is that misconduct or criminal conduct does not become burglary solely by reason of commission of the act on the property of another. To hold otherwise would be to distort the crime of burglary into meaninglessness.

Today, Chief Justice Stephens' prediction comes true.

STUMBO, J., joins this dissenting opinion.