# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

**THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.**

RENDERED: OCTOBER 23, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0315-MR

CHARLES J. MCVEY                                                                APPELLANT

V.
ON APPEAL FROM KNOX CIRCUIT COURT
HONORABLE GREGORY A. LAY, JUDGE
NO. 21-CR-00129-002

COMMONWEALTH OF KENTUCKY                                                APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

This case is before the Court as a matter of right following the conviction of the Appellant, Charles McVey, of complicity to murder, first-degree burglary, and four counts of unlawful imprisonment. This case is a companion to that of *Joseph Masters v. Commonwealth of Kentucky*, 2024-SC-0314-MR, which we have released contemporaneously with this decision.

McVey raises three issues on appeal: first, that Detective Middleton's testimony regarding the results of the rape kit done upon Kipenie Masters was hearsay and violated his constitutional right to confrontation; second, the trial court improperly admitted a copy of the purported lease; and third, the trial court improperly denied his request for a facilitation jury instruction. For the following reasons, we affirm McVey's convictions for unlawful imprisonment and complicity to murder. We reverse the conviction for first-degree burglary.

Our opinion in *Masters* details at length the underlying facts and interested persons should refer to that opinion for a fuller treatment. We give a brief synopsis here to orient the reader. In the early morning hours of July 30, 2021, Kipenie Masters told her husband, Joseph, she had been gangraped by three men at a party they had just left. That party was at a trailer which Joseph claimed to have leased. Joseph immediately called his friend, Charles McVey, and told him what happened. The Masters arrived at McVey's place soon after. McVey's girlfriend at the time, Laura White, called another man, Ethan Young, over.

Masters rejected the idea of calling the police and instead decided to eject the three accused men from what he believed was his property. The three men armed themselves with knives, guns, a taser, and a baseball bat, and proceeded to the trailer. Upon entering the trailer, the first man encountered was a passed-out William Miller. McVey woke him by hitting him in the throat with the taser and the head with his bat. Masters rounded up the other adults and brought them in the living room. Exactly opposite of what one would expect if a man's intent was only to eject persons from his property, Masters then compelled the hostages to strip and began to torture them. While this was happening, McVey remained in the room watching.

At some point, Matthew Welsh, one of the victims, saw an opportunity to defend himself and the others when a knife handle in Masters' pocket or waistband was exposed. Welsh went for the knife, seized it, and stabbed Masters in the back. At this point, all the eyewitnesses testified that Welsh

2

attempted to flee the scene. Only Masters testified at trial that Welsh continued his attack upon Masters. That, however, is irrelevant so far as McVey is concerned. What does matter is that Welsh did at some point attempt to flee the trailer, and when he did so, McVey physically intervened to prevent that escape. Masters then came up behind Welsh and fatally stabbed him.

Masters, McVey, and Young then fled the scene. McVey called another friend and asked him to drive Masters to a hospital in Tennessee, and that concludes McVey's involvement in the underlying events of this case. McVey did not testify at trial.

## I.      No Palpable Error in Admission of Rape Kit Testimony

As for the first issue, we have spoken thoroughly upon it in the *Masters* opinion. We reiterate that Detective Middleton's testimony regarding the rape kit and DNA tests was error in that the Commonwealth should have called the nurse who performed the rape kit and the lab technician who performed the DNA analysis to testify as to the results of each. *See generally Peters v. Commonwealth*, 345 S.W.3d 838, 843 (Ky. 2011) (report of blood sample test could not be admitted in trial in absence of the lab technician who prepared the report). There is no palpable error, however, because the belief that Kipenie had been raped was the principal defense of Masters and McVey. The Commonwealth was entitled to rebut the defense. The testimony was error

3

because of a procedural technicality in its admission, not because it was substantively improper and prejudicial.[1]

## II. Admission of Purported Copy of Lease Not Harmless Error

As for the second issue, we have discussed it at length also in the *Masters* opinion. We concluded the trial court's decision to admit the purported copy of the lease was not supported by sound legal principles and reversed Masters' conviction for first-degree burglary. We reached that conclusion because we could not conclude introduction of the purported copy of the lease did not have a substantial impact upon the jury in deciding the issue under a harmless error analysis. *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009). In other words, we reversed because we found the error sufficiently prejudicial. We must make the same analysis regarding prejudice here.

The Commonwealth argues because McVey had a reasonable basis to believe the trailer belonged to Masters, he was not prejudiced by the lease's introduction. As we understand it, we believe the Commonwealth is essentially making a relevancy argument; that regardless of Masters' true interest in the property, McVey was acting on Masters' representations and there was no independent basis for him to doubt that Masters was not the leaseholder to the trailer.[2]

---

[1] In the *Masters* decision we also noted the defense of extreme emotional disturbance did not depend upon the factual accuracy of Masters' belief and, therefore, there was no prejudice. While McVey tendered an EED instruction, it was not given by the trial court. There is no argument on appeal that this was error.

[2] To prevent any misunderstanding, we quote the relevant passage from the Commonwealth's brief:

McVey argues that "[w]hether the trailer was Masters' or whether Masters broke into the trailer was a critical fact that went to the very heart of the defense, especially the burglary charge." Accordingly, he has hitched his wagon so to speak to Masters' right to be on the property. In response to the Commonwealth's argument, McVey states:

> the conclusions that the jurors may have drawn from the evidence is what matters. If the jurors saw the evidence of the lease and concluded that it meant that Masters was lying about ever having leased the trailer, it would also reasonably conclude that McVey had not been told it was Masters' trailer and that McVey believed he was breaking into someone else's trailer when he accompanied Masters. Such a belief would prejudice McVey, and provides the harm necessary for this Court to reverse the conviction based on this issue.

The procedural posture of our review is not on a denial of a motion for directed verdict. Also, because this is a non-constitutional error, "[i]t is incumbent upon the litigant who seeks reversal of a trial court's judgment to demonstrate to an appellate court that the trial court has committed error which is prejudicial to the substantial rights of the litigant." *Bingham v. Davis,*

---

After the Commonwealth introduced the authenticated copy of the lease, Masters pursued the same defense theory—that the trailer belonged to him. This was after Deborah testified to signing the lease with Matthew. In fact, Masters went into detail about having an oral agreement with the landlord to lease the trailer and how he had told Deborah that she could stay there with Matthew. But he said that she went behind his back and signed a lease. He also stated that he told McVey and Young that they were going to interrogate and then kick out the men who had allegedly raped his wife. *Therefore, McVey had no reason to disbelieve that the trailer belonged to Masters when they went over there. He would not have known that Masters had not signed the lease if Masters was representing the trailer as his. Therefore, his assumption would have been reasonable, and he was not prejudiced by the lease's introduction.*

(internal citations omitted) (emphasis added).

5

444 S.W.2d 123, 124 (Ky. 1969); *Cf. Commonwealth v. McCarthy*, 628 S.W.3d 18, 38 (Ky. 2021) (putting burden upon Commonwealth to demonstrate harmlessness of constitutional error). The Commonwealth has essentially conceded that McVey was on the premises under a genuine but mistaken belief that he was authorized to be present. This is extremely awkward. The argument raises a serious question as to whether McVey should have been convicted of any degree of burglary. *See* LRC Commentary (iv) to KRS 511.020 (explaining that our statute precludes a burglary conviction for "a person who enters premises accidentally, under a mistaken belief as to authorization[.]"). In brief, burglary cannot be accidental or unkowing; there must be proof beyond a reasonable doubt that the defendant knew he was on the property unlawfully. *Hedges v. Commonwealth*, 937 S.W.2d 703, 706 (Ky. 1996). Because there is no argument on appeal that a motion for directed verdict was made to the trial court on that basis, it is improper to consider the issue now on direct appeal nor do we search the record looking for error. *Catlin v. Justice,* 156 S.W.2d 107, 111 (Ky. 1941).

Suffice it to say, we have reversed the first-degree burglary conviction for Masters, and it seems only just that we should do so for McVey. If a jury could conclude that Masters was the lawful tenant of the trailer, then he had a right to be on the property and his invitation to McVey to assist him was also lawful.

> It is generally true that a landowner or possessor may use that degree of force necessary, or that appears to him to be reasonably necessary under the circumstances to eject an unwelcome trespasser from his premises, [but] he is not justified in using any excessive force or weapon calculated to cause serious bodily injury where only his property is threatened[.]

6

*McCoy v. Taylor Tire Co.*, 254 S.W.2d 923, 924 (Ky. 1953). In other words, when a property owner or possessor seeks to eject a greater number of trespassers from his property, inviting a friend or two to make the numbers equal is not, in and of itself, unlawful. Although the possession of both deadly and non-deadly weapons by Masters, McVey, and Young seems to indicate a purpose other than merely removing persons from the property, that goes to the excessiveness of the forced used or contemplated. It has no bearing on whether Masters, and by extension McVey, were lawfully on the premises.

Since the Commonwealth concedes McVey's belief in Masters' representations was reasonable, we must remember that our burglary statute "emphasizes the unlawfulness of an intrusion . . . . 'The true essence of . . . burglary should be *intrusion* into premises without license or privilege.'" *Fletcher v. Commonwealth*, 59 S.W.3d 920, 922 (Ky. App. 2001) (quoting LRC Commentary (ii) to KRS 511.020). "[C]riminal conduct does not become burglary solely by reason of commission of the act on the property of another." *Hedges*, 937 S.W.2d at 707. This Court has, time and time again, "sought to avoid an analysis that results in burglary being used improperly to compound other independent criminal acts." *Commonwealth v. Partee*, 122 S.W.3d 572, 574 (Ky. 2003).

We are troubled by the Commonwealth's rationale for demonstrating lack of prejudice which, as noted, essentially concedes that McVey was acting under a mistaken belief of authorization. It is elementary (or ought to be anyway) that

7

the Commonwealth cannot argue to uphold a conviction by conceding an essential element of the crime was not proven. Had this issue come before us in the posture of review of a denial of directed verdict, we might conclude otherwise. Nevertheless, given the posture of the case and the Commonwealth's argument, we conclude McVey's conviction for first-degree burglary should be and is reversed.

### III. No Abuse of Discretion in Refusing to Give a Facilitation Instruction

"An instruction on a lesser-included offense is appropriate if and only if on the given evidence a reasonable juror could entertain reasonable doubt of the defendant's guilt of the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense." *Thompkins v. Commonwealth,* 54 S.W.3d 147, 151 (Ky. 2001) (quoting *Skinner v. Commonwealth,* 864 S.W.2d 290, 298 (Ky. 1993)). "The duty to instruct on any lesser included offenses supported by the evidence does not require an instruction on a theory with no evidentiary foundation." *Id.*

Criminal facilitation occurs when a person "acting with knowledge that another person is committing or intends to commit a crime, he engages in conduct which knowingly provides such person with means or opportunity for the commission of the crime and which in fact aids such person to commit the crime." KRS 506.080(1). A paradigm example is when a doctor or pharmacist gives a person a poisonous substance, knowing that person intends to poison

another, but without the intent that the poisoning occur. *Id.* (LRC Commentary). Complicity to a crime occurs

> when, with the intention of promoting or facilitating the commission of the offense, he:
>
>> (a) Solicits, commands, or engages in a conspiracy with such other person to commit the offense; or
>>
>> (b) Aids, counsels, or attempts to aid such person in planning or committing the offense; or
>>
>> (c) Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so.

KRS 502.020(1). We have observed "that a complicitor must be an instigator, or otherwise invested in the crime, while a facilitator need only be a knowing, cooperative bystander with no stake in the crime." *Monroe v. Commonwealth*, 244 S.W.3d 69, 75 (Ky. 2008). In other words, the primary difference is the state of mind; a complicitor intends the crime to be attempted or accomplished whilst a facilitator is one who is "wholly indifferent" to whether the crime is attempted or accomplished. *Thompkins*, 54 S.W.3d at 150-51.

We have held that affirmative proof of this state of mind is required in order to warrant a lesser-included facilitation instruction. *White v. Commonwealth*, 178 S.W.3d 470, 490 (Ky. 2005). It is not enough to assert that the jury may disbelieve the evidence demonstrating the state of mind of a complicitor. *Id.* The Court was confronted with precisely that argument in *White*, where the Appellant argued

> the jury could have believed the testimony of Shelley and Morris that he helped Shelley procure and prepare the getaway motorcycle, he bought the shells used in the murder, and that he suggested the place from which Shelley did the shooting, but might

9

> not have believed their testimony that he was an active participant in planning the murder.

*Id.* We held, "[t]hat the jury could have disbelieved part of the testimony of Shelley and Morris does not constitute evidence of the lesser mental state required for a facilitation instruction." *Id.* To hold otherwise would impose a *per se* rule that a facilitation instruction is warranted in every case where there is a charge of complicity. That would not comport with the general rule, stated above, that jury instructions must be based on the evidence presented at trial.

McVey argues he had no intent to inflict violence at the trailer much less to murder anyone. He never testified to that belief at trial. Instead, he merely posits that the jury might have concluded as such had it interpreted the evidence differently. That evidence does not warrant a facilitation instruction. Masters, with McVey and Young, went to the trailer armed with guns, knives, a taser, and a baseball bat. They were quite obviously anticipating the possibility of violence. McVey was in fact the first to use violence when he awoke Miller by striking him on the head and neck. When Masters began torturing the hostages, McVey stood by and did nothing to prevent it. When Welsh defended himself by stabbing Masters, McVey intervened to defend Masters. Finally, after the stabbing, the testimony supports that Masters declared "kill the mother\*\*\*ker" and "kill that son of a b\*\*ch, he stabbed me." The testimony supports the belief that Welsh attempted to flee after stabbing Masters, and that McVey physically intervened to prevent Welsh's escape.

10

"[A] jury can infer intent from the conduct of the defendant." *Berry v. Commonwealth*, 680 S.W.3d 827, 838 (Ky. 2023). That inference supports the conclusion that McVey was invested in the crime and aided Masters in the murder of Welsh by physically preventing his escape. It does not support the conclusion that McVey was wholly indifferent to Masters' stated desire that Welsh be killed. The trial court did not abuse its discretion in declining to give a facilitation instruction.

## IV. Conclusion

For the aforementioned reasons, we affirm McVey's convictions and sentences for four counts of unlawful imprisonment and complicity to murder. We reverse his conviction for first-degree burglary. Since the sentence imposed for the latter was run concurrently with the greater sentence for complicity to murder, his length of incarceration is unaffected by our reversal. We remand to Knox Circuit Court for amendment of the judgment and sentence, and for any further proceedings consistent with this opinion.

All sitting. Lambert, C.J.; Conley, and Goodwine, JJ., concur. Thompson, J., concurs in result only. Nickell, J., concurs in part and dissents in part by separate opinion which Bisig and Keller, JJ., join.

NICKELL, J., CONCURRING IN PART AND DISSENTING IN PART: For the reasons stated in my separate opinion rendered today in the companion case of *Masters v. Commonwealth*, 2024-SC-0314-MR, I respectfully concur in

11

part, dissent in part, and would affirm the judgment of conviction and sentence in its entirety.

Bisig and Keller, JJ., join.

COUNSEL FOR APPELLANT:

Aaron Reed Baker
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General