Timothy WELBORN, Appellant,

v.

COMMONWEALTH OF KENTUCKY, Appellee.

No. 2002–SC–1071–MR.

Supreme Court of Kentucky.

March 17, 2005.

Donna Boyce, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Gregory C. Fuchs, Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice WINTERSHEIMER.

This appeal is from a judgment based on a jury verdict that found Welborn guilty but mentally ill of three counts of first-degree assault and one count of disarming a police officer. He was sentenced to a total of thirty-five years in prison.

The questions presented are whether it was error to submit to the jury three separate charges of first-degree assault; whether it was error to allow the prosecution to play for the jury a video statement made by Welborn to police shortly after the offense; whether it was error to inform the jury during voir dire of the future consequences of returning verdicts of not guilty by reason of insanity and guilty but

mentally ill; whether it was error to prohibit the introduction of medical reports related to insanity at the time of the assault; whether there was prosecutorial error in closing arguments; whether it was error to deny a motion for directed verdict of not guilty by reason of insanity; whether it was error not to grant a motion for change of venue and not to grant a motion for new trial; and whether the cumulative effect of the alleged errors deprived Welborn of a fair trial.

A state trooper was dispatched by radio to a residence where Welborn was staying. The dispatcher told the officer that a mother needed someone to check on the welfare of her son, and the dispatcher also advised that the son was threatening to kill all non-Christians. When the trooper arrived at the home, he attempted to engage Welborn in conversation. Welborn insisted that he was feeling alright and had no problems. The trooper then received a call from dispatch regarding the status and the need for backup. As the trooper put his radio back onto his belt, Welborn lunged at him and grabbed the officer's weapon. They scuffled and rolled on the floor, each trying to gain control of the gun.

A brother-in-law who was in the house attempted to intervene on the behalf of the officer. When he did, the officer, who was locked up with Welborn, mistakenly grabbed the brother-in-law's hand, thinking he was going to handcuff his attacker. Welborn was able to grab the 10–millimeter weapon at that moment, disarming the officer. He then shot the trooper in the right arm. The trooper sought cover in the next room and after running out of the house towards his cruiser, Welborn fired again, striking the trooper in the neck. An attempt by the brother-in-law to disarm Welborn failed following another brief struggle. The officer was able to

obtain a shotgun from the cruiser, but Welborn fired again and struck the officer in the shoulder. Eventually, the brother-in-law subdued Welborn.

Welborn was arrested and sent to the Kentucky Correctional Psychiatric Center for a competency evaluation by the district court. The first competency report in 1999 indicated that the defendant was completely oriented at the time he entered the facility, but deteriorated after admission and was then incompetent for trial. Later, he was readmitted to the hospital under a circuit court order and was ultimately determined to be competent to stand trial. A third examination was ordered by the circuit court and the results were the same as the earlier evaluation which found the defendant competent to stand trial, but not criminally responsible for his actions at the time of the offense.

Originally, Welborn was indicted on three counts of first-degree assault, one count of disarming a police officer and one count of attempted murder. At trial, the prosecution's motion to dismiss the attempted murder charge was granted over the defendant's objection. The jury found Welborn guilty but mentally ill on the assault and disarming charges. The jury recommended 15 years on the first assault, 18 years on the second assault, 17 years on the third assault and three years on the charge of disarming a police officer, to run consecutively for a total of 53 years in prison. The trial judge reduced the sentence to 35 years by running counts one and four concurrently with consecutive sentences for counts two and three. This appeal followed.

## I. Instructions for Three Counts of Assault

 Welborn argues that it was a violation of double jeopardy prohibitions to submit his case to the jury on instructions

for three counts of first-degree assault. He contends that his behavior was one continuous course of conduct and that there was only one count of assault to submit to the jury. The real question is whether it was the individual acts which are prohibited, or the course of action they constitute. If it is the individual acts, then each act is punishable separately, but if it is a single course of conduct, there is only one punishment. *Cf. Commonwealth v. Burge*, 947 S.W.2d 805 (Ky.1996).

KRS 505.020 allows prosecution for multiple offenses arising from a single course of conduct. However, KRS 505.020(1)(c) does not permit such prosecution if the offense is designed to prohibit a continuing course of conduct and the defendant's course of conduct was uninterrupted by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses.

*Hennemeyer v. Commonwealth*, 580 S.W.2d 211 (Ky.1979), distinguished assault from wanton endangerment because of the necessity of intent and held that the purpose of the wanton endangerment statute is to protect each and every person from each act coming within the definition of the statute and not to punish a continuous course of conduct. There is no indication that the assault statute was intended to be interpreted differently. *Hennemeyer, supra,* sets out the commentary to the 1974 statute noting in particular that the only difference between assault and wanton endangerment is that there is no actual injury from the latter and because this is purely fortuitous, it would affect only the sanction. The assault statute prohibits individual acts and not a course of conduct. Chapter 508 of the Kentucky Revised Statutes is entitled "Assault and Related Offenses." KRS 508.010, the assault statute, is expressed in part as follows:

A person is guilty of assault in the first degree when: (a) He intentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument ....

■ Assault is a "result" offense. *Tharp v. Commonwealth*, 40 S.W.3d 356, 360–61 (Ky.2000); KRS 502.020 (1974 Official Commentary). The following three elements comprise the crime: 1) the assailant's mental state; 2) the means of attack; and 3) the resulting injury. *See Commonwealth v. Hammond*, 633 S.W.2d 73 (Ky. App.1982). Once all three elements are met, the crime is complete.

Accordingly, the circuit judge did not err in submitting the case to the jury with instructions for three counts of first-degree assault. The defendant shot the trooper three separate times and inflicted three separate wounds. The indictment specifically identifies each action by the location of the wound. Each shot was preceded by a sufficient period of time in which Welborn could reflect on his conduct and formulate intent to commit another act. Welborn first shot the trooper in the right forearm. Evidently, the recoil of the weapon prevented Welborn from immediately shooting again, and the trooper moved to a doorway and sought cover in the next room. As the trooper left the house, Welborn fired again and the officer was struck in the neck. The trooper then made it to his cruiser, removed a shotgun, and pointed it at Welborn who moved to a corner of the house. Welborn fired again and hit the officer for a third time in the shoulder. Evidence was introduced that the three shots resulted in three separate serious physical injuries.

There was a sufficient break in the conduct and time so that the acts constituted separate and distinct offenses. *Cf. Van Dyke v. Commonwealth*, 581 S.W.2d 563 (Ky.1979), which holds that criminal sexual

acts which occurred in a span of approximately 15 minutes on the same day did not prohibit multiple convictions. The unanimous court did not agree with the defendant's contention that the two convictions of rape and the conviction of sodomy should be merged into a single conviction because the offenses occurred during one continuous sexual assault against the same victim. *Van Dyke, supra.* Writing for the court, Justice Lukowsky stated that the fact that the acts occurred in a brief period of time with the same victim and in a continuum of force does not protect the defendant from prosecution and conviction on each separate offense. *Van Dyke.*

Welborn was properly charged and convicted and he was not subjected to double jeopardy. There is no legislative intent to the contrary, nor is there any Kentucky case law which supports the defendant's position. This is not a question of ambiguity as to legislative intent, and, consequently, any principles of lenity or leniency do not arise.

## II. The Videotaped Statement

■ It was not error for the trial judge to admit the videotaped statement by Welborn to the police into evidence because the defendant gave it after being duly Mirandized and without any indication that he was not competent to give the statement or that he gave it involuntarily in any way. The trial judge denied the suppression motion and subsequent objections after a hearing. The uncontradicted testimony of the police detective was to the effect that the defendant was readvised of his rights and gave a waiver and that he was not forced. He further stated that the defendant understood the questions and there was no indication that he was not competent, nor was he giving the statement involuntarily. *Cf. Reeves v. Commonwealth,* 462 S.W.2d 926 (Ky.1971). No error occurred in admitting the videotaped statement.

## III. Explanation to Jury

■ Welborn complains that it was error for the trial judge to advise the jury during voir dire as to the future consequences of their possible verdict. The alleged error was not preserved by contemporaneous objection. Review is sought under RCr 10.26.

The trial judge informed the jury during voir dire that there would be four verdicts for them to consider—not guilty, not guilty by reason of insanity, guilty but mentally ill and guilty. The jurors made several comments questioning the different verdicts and were not satisfied when it was explained that their concerns about the future implications of those verdicts were not important at this stage. After jurors continued to express concerns, the trial judge then observed that if the consequences of the verdict were not explained in voir dire, then they would lose 99 percent of the jury. Neither the Commonwealth nor the defense objected to informing the jury of the general consequences of the different verdicts.

When requested by either party in a trial by jury of the issue of absence of criminal responsibility for criminal conduct, the trial judge is required under RCr 9.55 to instruct the jury at the guilt/innocence phase as to the dispositional provisions applicable to the defendant if the jury returns a verdict of not criminally responsible by reason of mental illness or guilty but mentally ill. Considering the requirements of this rule, we can perceive no error in informing the jury of the same information during voir dire. Consequently, it was not error for the trial judge to explain to the jury in voir dire the procedural differences in a guilty but mentally ill verdict, and a not guilty by reason of

insanity verdict. The legal authorities relied on by Welborn predate the adoption of RCr 9.55. Welborn was not deprived of his constitutional rights to a fair trial. There was no contamination of the jury pool. There was no palpable error or manifest injustice.

### IV. Medical Report Disallowed

■ Welborn argues that it was error to deny the admission of certain medical reports into evidence. At trial, both Dr. Deland and Dr. Drogin were permitted to testify from their reports with respect to the condition of the defendant and their opinions thereof. The trial judge correctly denied an attempt by the defense to admit the reports as exhibits. They were entered into the record by avowal.

■ The reports were properly excluded because of their irrelevant and hearsay contents. *Cf. Wright v. Premier Elkhorn Coal Co.*, 16 S.W.3d 570 (Ky.App.1999) and KRE 801. Generally, a jury is not permitted to take even a sworn deposition to the jury room because jurors might give undue weight to the testimony contained in such a document, and not give adequate consideration to controverting testimony received from live witnesses. *See Berrier v. Bizer*, 57 S.W.3d 271 (Ky.2001). There was no error in denying admission of the reports as exhibits.

### V. Closing Argument

Welborn contends that the prosecutor erred in closing arguments in the following three ways: 1) by criticizing the expert witness for failing to testify to the ultimate issue when the witness believed he could not properly do so under the rules of evidence; 2) by incorrectly stating the legal standard for the defense of insanity; and 3) by encouraging a conviction and high sentence based upon speculation about his future dangerousness to the com-

munity. These contentions were not properly preserved, but the defendant seeks review as palpable error pursuant to RCr 10.26.

There was no palpable error when the prosecutor commented on the testimony of Dr. Deland. Defense counsel claimed that the only evidence presented was that Welborn was insane. In response, the prosecutor noted that Dr. Deland did not say Welborn was insane. There was no misleading of the jury as a result of this exchange.

■ The prosecutor asserted during closing argument that the defendant was mentally ill, but he knew "right from wrong." He then closed by stating that this was "not a case about whether he was mentally ill, it's whether he knew right from wrong, whether he was insane." Welborn claims that the prosecutor misstated the test for insanity as being whether he knew right from wrong generally, as opposed to whether he lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. *Mattingly v. Commonwealth*, 878 S.W.2d 797, 800 (Ky. App.1993). In *Mattingly, supra*, the error was preserved by contemporaneous objection. Here, we find no palpable error because the jury instructions correctly stated the test for insanity.

■ In regard to the penalty phase argument, Welborn claims that the jurors were told that they were not here just to punish, but for "protection of our communities, protection of all of us." The prosecutor also warned of a possible relapse by Welborn and advised jurors to "take that into consideration" when deciding a sentence. The prosecutor was asking the jury to fix a proper punishment based on the crime and the circumstances in response to defense counsel's request for a minimum

concurrent sentence. His argument did not exceed the broad latitude provided to convey to the jury that the offenses involved should not be considered lightly. There was no error, nor was there any palpable error or manifest injustice as a result of the statements. A careful review of the entire argument discloses no palpable error or cumulative error.

## VI. Directed Verdicts

 The trial judge properly denied the motions for directed verdicts. The standard for consideration of a motion for directed verdict is well known and is set out in *Commonwealth v. Sawhill,* 660 S.W.2d 3 (Ky.1983), and restated in *Commonwealth v. Benham,* 816 S.W.2d 186 (Ky.1991). On appellate review of the denial of a directed verdict, the test is whether, under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt. *Benham, supra; Sawhill, supra.*

 The evidence in support of Welborn's insanity defense was not as overwhelming as he now argues. For example, the defendant's expert based his opinion that Welborn was insane at the time of the shootings in part on the fact that he did not attempt to conceal his crimes or seek to escape detention. However, Welborn actually tried to blame his brother-in-law for the shootings. Flight and attempt at concealment are circumstantial evidence of guilt because they suggest a guilty state of mind. *Fugate v. Commonwealth,* 445 S.W.2d 675 (Ky.1969). Further, Welborn acknowledged on cross-examination that he did not kill his other family members even though he thought they were going to kill him because it was wrong. His brother-in-law indicated that Welborn stopped pursuing the state trooper not because he had killed him, but because he [the brother-in-law] directed him to stop.

Here, the question for the jury was whether Welborn was or was not insane at the time of the shooting, and whether as a result of mental illness, he lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. *See* KRS 504.020. The jury weighed all the factors considered in regard to the paranoid schizophrenia argument. It could not be said that it was clearly unreasonable for the jury to find the defendant guilty but mentally ill, and not "not guilty by reason of insanity." The trial judge correctly denied the motions for directed verdicts. *Port v. Commonwealth,* 906 S.W.2d 327, 330–331 (Ky.1995).

## VII. Change of Venue

 Welborn challenges the decision of the trial judge to deny the motion for change of venue. He admits that his motion was deficient because it was not supported by affidavits. The motion was also not verified pursuant to KRS 452.220(2). We recognize that it is not error to deny a motion which is not supported by a verified affidavit or petition. *Cf. Whitler v. Commonwealth,* 810 S.W.2d 505 (Ky.1991). Here, the failure to file the affidavit is fatal to the petition because compliance with KRS 452.220 is mandatory. *See Caine v. Commonwealth,* 491 S.W.2d 824 (Ky.1973). There was no error.

## VIII. Cumulative Error

Finally, Welborn claims that he is entitled to a reversal because of cumulative error. Our careful review of the entire record in this case indicates that the defendant received a fundamentally fair trial and that there was no error and thus no cumulative error that would ever require reversal. *See Bowling v. Commonwealth,* 942 S.W.2d 293 (Ky.1997). Welborn was

not denied any of his rights pursuant either to the federal or state constitution.

The judgment of conviction is affirmed.

All concur.