# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: JUNE 15, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2016-SC-000036-MR

DATE 7/6/17 Kim Redmon, DC

D'ANDRE SWAIN      APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.      HONORABLE SUSAN SCHULTZ GIBSON, JUDGE
NO. 13-CR-000589

COMMONWEALTH OF KENTUCKY      APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

A Jefferson County jury found D'andre Swain guilty of first-degree assault, first-degree burglary, first-degree wanton endangerment, and of being a second-degree persistent felony offender. Consistent with the jury's sentencing recommendations, the trial court fixed his sentence at thirty-three years' imprisonment.

Swain now appeals as a matter of right, Kentucky Constitution § 110(2)(b), arguing that the trial court erred by: (1) denying his motions for directed verdict on the burglary and wanton endangerment charges; and (2) excluding three of his expert witnesses from testifying regarding extreme emotional disturbance. For the reasons set forth below, we affirm the trial court.

## I. BACKGROUND

Kena Hammond and D'andre Swain dated for five months and lived together for part of that time; however, the two separated just under a month prior to the subject-incident. After separating, Hammond sought and received an Emergency Protective Order (EPO) against Swain. The EPO prohibited Swain from having any contact with Hammond, being within 500 feet of her, or returning to the Dumesnil Street residence in Louisville that they had shared.

On January 16, 2013, after working during the day, Hammond returned to her Dumesnil Street residence. She had dinner and went to sleep before being awoken by a loud noise. Hammond went to the front door and found everything to be normal. On her way back to bed, she passed her son's bedroom. Hammond's son was not at home, but his bedroom door opened and Swain emerged. The loud bang Hammond heard was Swain pushing her son's air conditioning unit through the window to gain entrance to the residence.

Swain told Hammond he knew he was not supposed to be at the residence, but he just wanted to talk. Swain began beating Hammond and took her cell phone in order to see if she had been talking to other men. Hammond was able to calm Swain somewhat but she noticed he kept eyeing a hammer that was on the floor; Swain told Hammond, "I should hit you with it." Hammond sought to distract Swain by asking him to put the air conditioning unit back in her son's window. Once Swain was inside the son's room, Hammond locked the door from the outside and ran out the front door.

When Hammond reached the corner, she turned and saw Swain was chasing her, holding the hammer in his hand. By the time she reached the next corner, Swain had caught up with her. He put her in a headlock and choked her until she felt faint. Swain stated, "If I can't have you, ain't nobody gonna have you" and began striking her in the head repeatedly with the hammer. After three blows from the hammer, Hammond lost consciousness.

When the Louisville Metro Police Department arrived on the scene, they found Hammond bloodied and cut open in several places, barefoot, wearing only a bra and jeans, and unable to communicate. She was transported to the University of Louisville Medical Center, where an examination revealed that she had injuries consistent with strangulation; her skull had been fractured; her body and head had numerous lacerations; one of her teeth was chipped; and she had evidence of a traumatic brain injury. Physicians surgically repaired Hammond's skull fracture through insertion of a metal plate. Police arrested Swain two months later and these proceedings commenced. We set forth additional facts as necessary below.

## II. ANALYSIS

### A. The trial court did not abuse its discretion by denying Swain's motions for a directed verdict.

On a motion for a directed verdict of acquittal, the trial court must draw all fair and reasonable inferences in the Commonwealth's favor. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). In ruling on the motion, "the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be

3

given to such testimony." *Id.* "On appellate review, we determine whether, under the evidence viewed as a whole, it would be clearly unreasonable for a jury to find the defendant guilty." *Brown v. Commonwealth,* 174 S.W.3d 421, 424 (Ky. 2005).

### 1.    First-degree burglary.

Swain challenges the trial court's denial of his motion for a directed verdict of his burglary charge. In order to convict Swain of first-degree burglary, the Commonwealth was required to prove each element of the crime. *Williams v. Commonwealth,* 721 S.W.2d 710, 712 (Ky. 1986).

> A person is guilty of burglary in the first degree when with the intent to commit a crime, he knowingly enters or remains unlawfully in a building, and when in effecting entry or while in the building or in the immediate flight therefrom, he or another participant in the crime:
>
> > (a) Is armed with explosives or a deadly weapon; or
> >
> > (b) Causes physical injury to any person who is not a participant in the crime; or
> >
> > (c) Uses or threatens the use of a dangerous instrument against any person who is not a participant in the crime.

Kentucky Revised Statute (KRS) 511.020(1). Swain argues that the Commonwealth did not present evidence that he knowingly entered or remained unlawfully in Hammond's residence "with the intent to commit a crime." We disagree.

As an initial matter, we agree with Swain that a mere violation of an EPO may not be used to satisfy burglary's intent-to-commit-a-crime element. *See Hedges v. Commonwealth,* 937 S.W.2d 703, 706 (Ky. 1996) ("The mere violation

4

of the DVO without intent to commit an independent crime, is impermissible to support a finding of burglary."). However, in the present matter, the jury could have reasonably believed that Swain had the requisite intent to commit a crime based not solely on his violation of the EPO, but on his manner of entering the residence, and his actions after doing so.

The leading cases that are instructive on this matter are *McCarthy v. Commonwealth*, 867 S.W.2d 469 (Ky. 1993), and *Hedges v. Commonwealth*, 937 S.W.2d at 703. In *McCarthy*, the defendant's estranged wife had an EPO against him, which prohibited him from "coming about his wife or onto her premises." 867 S.W.2d at 470. Notwithstanding the EPO, McCarthy sought entry into his wife's home. *Id.* Upon his wife denying him entry, McCarthy kicked down the door. *Id.* The couple then got into a fight and, as a result, the wife "sustained injuries." *Id.*

The pertinent issue in *McCarthy* was a question from the jury, "Under [the burglary instruction], the phrase 'with intent to commit a crime[,]' can you tell us if this refers to the crime of coming onto the property or the crime of assault?" *Id.* The trial court responded: "To commit any crime." *Id.* A majority of the Court in *McCarthy* held that the judge's response was a correct statement of law. *Id.* at 471. However, Justice Leibson, dissenting, noted that while EPOs "are relevant as evidence of motive or state of mind, and also as a part of the immediate circumstances bearing on the crimes charged," an EPO, standing alone, cannot satisfy the intent-to-commit-a-crime element of

5

burglary—there must be an "intent to commit a crime *in addition* to criminal trespass." *Id.* at 472 (emphasis in original).

In *Hedges*, the defendant's estranged wife also had an EPO against him; however, that EPO did not contain a "no contact" provision. 937 S.W.2d at 704. One night, Hedges went to his wife's residence. *Id.* at 705. His wife had a male friend over at the time, and told him to lock himself in her bedroom. *Id.* Hedges's wife allowed Hedges in the residence, who then heard noise coming from the bedroom. *Id.* Hedges forced open the bedroom door just in time to see the man diving out the window. *Id.* "Incensed upon discovering another man in his wife's bedroom, [Hedges] proceeded to break a fish tank, a microwave oven, and a vase—all of which was property owned jointly by [him and his wife]." *Id.* Hedges's wife then ran to a neighbor's home to call police, before returning to the house. *Id.* Hedges, still upset, grabbed her by the neck, but caused no physical injury. *Id.*

The *Hedges* Court analyzed the case in accordance with the dissent in *McCarthy* and held, as noted above, that a mere violation of an EPO, alone, could not support a finding of burglary. *Id.* at 706. The *Hedges* Court, distinguished that case from *McCarthy*, in which McCarthy, who had an EPO against him that contained a "no contact" order, kicked in the door of his wife's home in order to make entry. 867 S.W.2d at 470. The Court in *Hedges* also noted that "[i]n *McCarthy*, there was significant evidence, other than the violation of the EPO, to support the contention that McCarthy intended to commit a crime when he went to his wife's residence." *Hedges*, 937 S.W.2d at

6

706. "Unlike [Hedges's] case, when McCarthy's wife refused him entry, he entered her apartment anyway by unlawfully kicking in the door." *Id.* We discern that the present matter is not distinguishable from *McCarthy*.

Upon entering Hammond's residence, Swain acknowledged that he had been ordered to stay away from Hammond and her residence. *See Matthews v. Commonwealth*, 709 S.W.2d 414, 418 (1985) ("It is quite evident that . . . the court order to stay away from [Matthew's wife's] house . . . [is] relevant not only as evidence of motive or state of mind, but as part of the immediate circumstances bearing on the crimes charged."). Knowing that he was neither permitted to be there, nor would he be allowed entry by Hammond, he forcibly entered the residence, pushing an air conditioning unit through a window, and crawling into Hammond's son's room while Hammond slept.[1] Swain then beat Hammond in order to obtain her cell phone and threatened to hit her with the hammer. A reasonable jury could infer, based on his surreptitious and forcible entry, as well as his actions after entering, that Swain entered Hammond's residence with the requisite intent to commit a crime, thus, satisfying the complained-of element of burglary. We hold that the trial court did not abuse its discretion by denying Swain's motion for a directed verdict.

### 2. First-degree wanton endangerment.

Swain also challenges the trial court's denial of his motion for a directed verdict of his wanton endangerment charge. Specifically, he argues that his

---

[1] Swain testified that Hammond let him in through the front door and he never pushed in the air conditioning unit. However, as noted above, in reviewing a motion for a directed verdict, we must draw all fair and reasonable inferences in the Commonwealth's favor.

7

convictions on both wanton endangerment and assault were in violation of the double jeopardy clauses of the United States and Kentucky Constitutions, which prohibit a person from being twice-punished or twice-convicted for the same offense.

At the outset, we note that the instructions given to the jury for wanton endangerment and assault, respectively, were predicated on two separate acts, although Swain asserts that these acts constituted one continuing course of conduct. The jury instructions required the jury to find Swain guilty of wanton endangerment if it determined that Swain had placed Hammond in a "chokehold" and thereby created a substantial danger of death or serious physical injury to Hammond that manifested extreme indifference for the value of human life. On the other hand, the jury instructions required the jury to find Swain guilty of assault if it determined that Swain caused serious physical injury to Hammond by striking her head with a hammer, that the hammer was a "dangerous instrument," and that Swain intended to cause serious physical injury to Hammond when he attacked her with the hammer.

"Double jeopardy does not occur when a person is charged with two crimes arising from the same course of conduct, as long as each statute 'requires proof of an additional fact which the other does not.'" *Commonwealth v. Burge*, 947 S.W.2d 805, 809 (Ky. 1996) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). We analyzed this issue in *Matthews v.*

8

*Commonwealth,* 44 S.W.3d 361 (Ky. 2001).[2] There, we noted that each offense required proof of an element that the other did not. *Id.* at 365 (citing to *Burge,* 947 S.W.2d at 811). "Assault [ ] requires a finding of physical injury, whereas wanton endangerment does not. Wanton endangerment requires conduct which creates a substantial danger of death or serious physical injury to another, whereas fourth-degree assault does not." *Id.* Therefore, Swain's argument under *Burge* is without merit.

Swain correctly notes that double jeopardy determinations that are challenged as constituting a "continuing course of conduct" are also subject to KRS 505.020(1)(c). KRS 505.020(1)(c) provides, in pertinent part:

> (1) When a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense when:
>
> . . . .
>
> (c) The offense is designed to prohibit a continuing course of conduct and the defendant's course of conduct was uninterrupted by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses.

Swain's reliance thereon is misplaced.

Again, this Court has previously addressed this issue. In *Hennemeyer v. Commonwealth,* 580 S.W.2d 211 (Ky. 1979), this Court noted that assault is distinguished from wanton endangerment. This Court more recently reexamined *Hennemeyer.* "[T]he purpose of the wanton endangerment statute is to protect each and every person from each act coming within the definition

---

[2] The present matter concerns first-degree wanton endangerment and first-degree assault. While *Matthews* concerned first-degree wanton endangerment and *fourth-degree* assault, the analysis thereof is identical.

of the statute and not to punish a continuous course of conduct. There is no indication that the assault statute was intended to be interpreted differently." *Welborn v. Commonwealth*, 157 S.W.3d 608, 612 (Ky. 2005). "The assault statute prohibits individual acts and not a course of conduct." *Id.* Therefore, because wanton endangerment and assault prohibit individual acts and not a course of conduct, KRS 505.020(1)(c) is not applicable to Swain's convictions.

Furthermore, Swain's course of conduct can include "a cognizable lapse . . . during which [he] could have reflected upon his conduct, if only momentarily, and formed the intent to commit additional acts." *Kiper v. Commonwealth*, 399 S.W.3d 736, 744 (Ky. 2012). When reviewed in light of our directed verdict standard, a reasonable jury could determine, based on Hammond's testimony, that Swain's choking Hammond and hitting her with the hammer were two separate and distinct acts. The jury heard from Hammond that, after she fled the residence, Swain caught up to her, put her in a headlock and began "whooping her," while he yelled and cussed. She testified that cars were passing by during this time, and that she began to feel faint from Swain's hold. Swain then told her, "If I can't have you, ain't nobody gonna have you" and began hitting her in the head with the hammer. The jury could infer from that evidence that, between the instant Swain began choking Hammond and the instant he began hitting her with the hammer, Swain could have transitioned from having the intent required of wanton endangerment to that required of assault, *i.e.*, to cause serious physical injury by means of a

10

deadly weapon. As such, the trial court did not err in denying his motion for a directed verdict.

## B. The trial court did not err by excluding Swain's expert witness testimony regarding extreme emotional disturbance.

During trial, the court found that there had been no testimony that evidenced the required triggering event necessary to prove an extreme emotional disturbance (EED) defense. Based on the court's ruling, Swain challenges the exclusion of three expert witnesses, who proposed to testify that Swain was under the influence of EED at the time he struck Hammond with the hammer.

KRS 508.040 provides that the crime of assault may be mitigated by the influence of EED. In *Greene v. Commonwealth*, this Court summarized the elements of an EED claim:

> Although EED is essentially a restructuring of the old common law concept of "heat of passion," the evidence needed to prove EED is different. There must be evidence that the defendant suffered "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from [an] impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *McClellan v. Commonwealth*, 715 S.W.2d 464, 468–69 (Ky. 1986). "[T]he event which triggers the explosion of violence on the part of the criminal defendant must be sudden and uninterrupted. It is not a mental disease or illness.... Thus, it is wholly insufficient for the accused defendant to claim the defense of extreme emotional disturbance based on a gradual victimization from his or her environment, unless the additional proof of a triggering event is sufficiently shown." *Foster v. Commonwealth*, 827 S.W.2d 670, 678 (Ky. 1991) (citations omitted). And the "extreme emotional disturbance ... [must have a] reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." [*Spears v. Commonwealth*, 30 S.W.3d 152, 155 (Ky. 2000)].

11

197 S.W.3d 76, 81-82 (Ky. 2006).

Additionally, "an EED instruction must be supported by some definite, non-speculative evidence." *Padgett v. Commonwealth*, 312 S.W.3d 336, 341 (Ky. 2010). "The defendant must be both extremely emotionally disturbed and acting under that emotional influence; and there must be an identifiable 'triggering event' which resulted in the emotional disturbance." *Driver v. Commonwealth*, 361 S.W.3d 877, 888 (Ky. 2012) (citing *Spears*, 30 S.W.3d at 155).

At trial, Swain testified that he went to Hammond's residence to retrieve his clothes. After speaking with Hammond, she ran out of the residence for reasons unknown to him, and he ran after her. Upon catching up with her, Swain testified that he held her in a "bear hug" in order to "diffuse the situation from getting more out of hand than it already was." He contended that once he thought Hammond had calmed down, he let her go, and she swung around and hit him with a hammer she had been holding. While Swain admitted to striking Hammond with the hammer, he testified that, after she allegedly hit him with the hammer, everything became "a blur."

The trial court, in denying Swain's introduction of three expert witnesses, noted that no testimony was elicited from either party that identified the triggering event required of EED. Swain argued that his experts would testify that the triggering event was Hammond striking Swain with the hammer. The trial court correctly cited *Talbot v. Commonwealth* in that, "[w]here . . . there is no other factual basis to support a defense of extreme emotional disturbance,

12

that defense cannot be bootstrapped into the evidence by an expert opinion premised primarily on out-of-court information furnished by the defendant." 968 S.W.2d 76, 84 (Ky. 1998). Furthermore, the trial court noted that there must be "some evidence beyond an inference that if one gets hit in the head, one's going to be pissed off about it." The court continued:

> You can't infer from a situation that there was extreme emotional disturbance. . . . Unless there is actual testimony that that was the triggering event, then the expert doesn't come in. Here, we don't have that. We have Mr. Swain's testimony—and he is the only one that testified that he was hit in the head with a hammer—and then after that, nothing with regard to his mental or emotional state.

We discern this to be a correct statement of law. Unless the EED theory was supported by the evidence, the trial court was under no duty to allow the jury to consider it. *Driver*, 361 S.W.3d at 888. Swain's testimony directly contradicts his being under the influence of EED at the time he struck Hammond with the hammer.

Although Swain intended to call three expert witnesses, he only introduced the testimony of Dr. Gibson by avowal. However, Dr. Gibson's testimony did not support Swain's EED theory. Dr. Gibson's testimony was equivocal at best with regard to a triggering event and whether Swain was, in fact, acting under the influence of EED. Dr. Gibson noted that Swain had a pattern of acting irrationally to try to "get a situation under control." Dr. Gibson's observation does not characterize EED, which, by definition, requires that the defendant, himself, is out of control. We note, as did the trial court, that Swain testified he was the calmer of the two parties and he had chased

13

after Hammond in order to "defuse the situation." This testimony contradicts Dr. Gibson's assertion that Swain was acting under the influence of EED. The trial court was required to determine if his testimony was sufficient to warrant an EED instruction. Because Swain did not present sufficient evidence to support the EED theory, the court did not err in denying his introduction of expert testimony regarding EED.

### III. CONCLUSION

For the foregoing reasons, the judgment of the Jefferson Circuit Court in this matter is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Roy Alyette Durham II
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Emily Bedelle Lucas
Assistant Attorney General

14