# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: OCTOBER 24, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0417-MR

JOSEPH FRANKLIN                                                                          APPELLANT

V.
ON APPEAL FROM HOPKINS CIRCUIT COURT
HONORABLE CHRISTOPHER BRYAN OGLESBY, JUDGE
NO. 21-CR-00413

COMMONWEALTH OF KENTUCKY                                                              APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Joseph Franklin was found guilty by a Hopkins County jury of various crimes including first- and second-degree wanton endangerment, tampering with physical evidence, first-degree fleeing and evading (two counts), and of being a persistent felony offender in the first degree (PFO I). As recommended by the jury, Franklin was sentenced to twenty years in prison. On appeal, he claims that (1) KRE[1] 404(b) evidence was improperly admitted at trial, (2) the trial court erred by denying a directed verdict on the tampering with physical evidence charge, as well as the fleeing and evading on foot charge, and (3) double jeopardy bars the conviction for one of the fleeing and evading counts. Upon review, we affirm.

---

[1] Kentucky Rule of Evidence.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2021, Franklin was staying at Jeremy Hammack's home. Hammack was a confidential informant and he called crime stoppers and told them that Franklin had an active warrant for his arrest. A surveillance team started watching Hammack's home. On the day of his arrest, Franklin left the residence in a maroon truck. The surveillance team followed Franklin to Joshua Scott's residence. Scott was a known methamphetamine trafficker.

When Franklin left Scott's residence, officers in marked vehicles were waiting to initiate a traffic stop of Franklin. Sergeant Bailey activated his emergency equipment and tried to stop Franklin. Franklin fled and a pursuit ensued. The pursuit lasted about fifteen minutes and ended when Franklin crashed the truck.

During the pursuit, Franklin drove 70 m.p.h. in a 35 m.p.h. zone, passed a school bus, and disregarded multiple stop signs. The officers observed Franklin throwing something out of the passenger window. Franklin wrecked the truck near the White City Wildlife Management Area and fled on foot. Multiple officers searched the area for over two hours trying to find Franklin.

John Slaton's family owned property that connected to the wildlife area. Slaton, saw Franklin, sweaty and muddy, walking on the family property. Slaton knew that law enforcement was looking for Franklin and offered him a ride in the bed of his pickup truck. On the way, Slaton called law enforcement and they arrived to take Franklin into custody. Franklin was arrested at 6:30 p.m., about four hours after the pursuit began.

During the pursuit, Sergeant Bailey radioed that Franklin had thrown a bag out the passenger window. Major Young, who was following the pursuit, stopped to look on the side of the road for the bag. Major Young found a bag which contained nine grams of methamphetamine.

Detective Ross obtained a search warrant for the truck Franklin wrecked and left behind. Eighteen grams of methamphetamine, scales, and money were found on the passenger floorboard.

A Hopkins County grand jury indicted Franklin on sixteen counts related to his arrest. At trial, in addition to finding Franklin guilty of being a PFO, the jury found him guilty of the following offenses: first-degree trafficking in a controlled substance (methamphetamine, more than 2 grams); first-degree wanton endangerment; tampering with physical evidence; first-degree fleeing and evading police (motor vehicle); first-degree fleeing and evading police (on foot); first-degree criminal mischief; first-degree possession of a controlled substance (methamphetamine); second-degree wanton endangerment; possession with intent to use drug paraphernalia; speeding; reckless driving; and disregard of at traffic control device (two counts).[2] As recommended by the

---

[2] The jury recommended for each offense the following sentence or fine:
1) First-degree trafficking of methamphetamine: 10 years enhanced to 20 years.
2) First-degree wanton endangerment: 5 years enhanced to 20 years.
3) Tampering with physical evidence: 5 years enhanced to 15 years.
4) First-degree fleeing/evading police (motor vehicle): 5 years enhanced to 15 years.
5) First-degree fleeing/evading police (on foot): 5 years enhanced to 15 years.
6) First-degree criminal mischief: 5 years enhanced to 10 years.
7) First-degree possession of methamphetamine: 3 years in prison.
8) Second-degree wanton endangerment: 12 months in prison.
9) Possession with intent to use drug paraphernalia: 12 months in prison.
10) Speeding, recommended fine: $100.00.
11) Reckless driving, recommended fine: $100.00.

jury, the trial court sentenced Franklin to serve concurrent sentences, a total of twenty years in prison. This appeal followed.

Additional facts pertinent to Franklin's claims on appeal are set forth below.

## ANALYSIS

### I. The trial court did not abuse its discretion by denying a mistrial.

Franklin claims that KRE 404(b) was violated when Detective Dozer, who was part of the surveillance team, testified that he recognized Franklin from a recent jail photo. Because KRE 404(b) was not mentioned by Franklin as a basis for granting his motion for a mistrial, the Commonwealth views the claim as unpreserved. However, we view the KRE 404(b) complaint to be apparent from the context and defense counsel's reference to the pretrial motion *in limine* to exclude testimony relating to Franklin's prior convictions as sufficiently preserving the issue.

During trial, Detective Dozer testified that he did not know Franklin but had seen social media pictures. As the detective was saying he had also seen "I think recent jail, or previous, jail photos," defense counsel objected. Defense counsel argued that the jury heard the prejudicial "previous jail pictures" testimony and moved for a mistrial. Although the trial court acknowledged that it did not hear the testimony, the trial court offered to admonish the jury. Defense counsel declined the admonition, stating she did not believe it would cure the error and did not want to draw further attention to the testimony.

---

12) Disregard of a traffic control device, recommended fine for each count: $100.00.

4

Defense counsel reviewed the video testimony and again renewed her motion for a mistrial, arguing that the jury heard Detective Dozer say "jail" twice and "photos" once. The trial court again denied the motion.

"[A] mistrial is an extreme remedy and should be resorted to only when there is a fundamental defect in the proceedings and there is a 'manifest necessity for such an action.'" *Woodard v. Commonwealth*, 147 S.W.3d 63, 68 (Ky. 2004) (citation omitted). Mistrial should only be "used in those situations where an error of such import has been committed that a litigant's right to a fair and impartial jury would be violated if a new trial were not held." *Welch v. Commonwealth*, 235 S.W.3d 555, 559 (Ky. 2007) (citation omitted). "The occurrence complained of must be of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way." *Gould v. Charlton Co., Inc.*, 929 S.W.2d 734, 738 (Ky. 1996) (citations omitted). The trial court's denial of a mistrial is reviewed for an abuse of discretion. *Bray v. Commonwealth*, 68 S.W.3d 375, 383 (Ky. 2002); *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).[3]

Franklin argues that the fundamental defect is that Detective Dozer's testimony about the jail photo cast Franklin as a known criminal in the Hopkins County area. He contends that the testimony was improper KRE 404(b) evidence and did not fall within the KRE 404(b)(1) exception which

---

[3] An abuse of discretion occurs if the trial court's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.

allows evidence of prior bad acts to prove identity.[4] The Commonwealth, on the other hand, argues that Detective Dozer's inadvertent and isolated reference to the jail photo was not inflammatory or highly prejudicial and an admonition would have cured any error.

We assume, for analysis purposes, that Detective Dozer's testimony amounted to improper evidence of Franklin's prior bad acts. Nevertheless, not all references to prior bad acts are prejudicial enough to warrant a mistrial. *See Welch v. Commonwealth,* 235 S.W.3d 555, 559-60 (Ky. 2007). This is especially true when the prejudicial effect can be obviated through the use of an admonition. *Maxie v. Commonwealth,* 82 S.W.3d 860, 863 (Ky. 2002).

The rules regarding admonitions apply "the same where the movant waives the protections of an admonition due to oversight or as a matter of trial strategy. If an admonition is offered in response to a timely objection but rejected by the aggrieved party as insufficient, the only question on appeal is whether the admonition would have cured the alleged error." *Sherroan v. Commonwealth,* 142 S.W.3d 7, 17 (Ky. 2004) (citation omitted).

> There are only two circumstances in which the presumptive efficacy of an admonition falters: (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition *and* there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant; or (2) when the question was asked without a factual basis *and* was "inflammatory" or "highly prejudicial."

---

[4] Franklin's argument that the Commonwealth did not give proper KRE 404(c) notice is unpreserved. We decline to address it. *See Shepherd v. Commonwealth,* 251 S.W.3d 309, 316 (Ky. 2008).

*Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003) (internal citations omitted).

Upon review, we believe a mistrial was not warranted as the admonition offered by the trial court, for the jury to disregard Detective Dozer's testimony about the photos, would have served to remove any prejudice caused by the improper statements. Detective Dozer's reference to the jail photos was not a circumstance when there was an overwhelming probability that the jury would have been unable to follow the court's admonition. And furthermore, the Commonwealth had a factual basis to ask Detective Dozer how he knew it was Franklin driving the vehicle leaving Scott's residence. *See Bartley v. Commonwealth*, 400 S.W.3d 714, 736 (Ky. 2013). We conclude that the trial court did not abuse its discretion by denying the motions for a mistrial.

## II. The trial court did not err by denying the motions for a directed verdict.

Franklin's second claim is that the trial court erred by not granting his motion for a directed verdict on the tampering with physical evidence charge and his motion for a directed verdict on the fleeing and evading on foot charge. Because Franklin presents a different reason than the one advanced at trial as to the reason he was entitled to a directed verdict on the tampering charge, he requests palpable error review under RCr 10.26.

"When presented with a motion for a directed verdict, a court must consider the evidence as a whole, presume the Commonwealth's proof is true, draw all reasonable inferences in favor of the Commonwealth, and leave

7

questions of weight and credibility to the jury." *Acosta v. Commonwealth*, 391 S.W.3d 809, 816 (Ky. 2013) (citing *Commonwealth v. Benham*, 816 S.W.2d 186, 187–88 (Ky. 1991)). A trial court should deny a directed verdict when the "Commonwealth has produced . . . more than a scintilla [of evidence] and it would be reasonable for the jury to return a verdict of guilty based on it." *Id.* The standard is slightly more deferential when the denial of the directed verdict is reviewed on appeal; then, the trial court should be reversed only if 'it would be *clearly unreasonable* for a jury to find guilt.'" *Id.*

### A.    Tampering with Physical Evidence

Kentucky Revised Statute (KRS) 524.100(1) provides that "[a] person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he: (a)Destroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding." Franklin asserts that the Commonwealth failed to prove beyond a reasonable doubt that he completed the proscribed act of concealing the methamphetamine which was thrown from the truck so that it would not be available as evidence against him. Citing *Commonwealth v. James*, 586 S.W.3d 717, 724 (Ky. 2019), Franklin argues that the act of dropping evidence while in plain view of an officer is not removal or concealment.

In *James*, this Court addressed whether the criminal-act element was met when a person, in plain view of an officer, drops or tosses away evidence of

8

a possessory crime in a manner that makes the evidence easily retrievable by law enforcement. In that case, the defendant, on foot and in the presence of law enforcement, turned his back to the officers and dropped multiple items, including a pipe containing methamphetamine. 586 S.W.3d at 730. The officer walked over to the area where he saw the items fall and collected the glass pipe. *Id.* This Court concluded that even though the defendant may have met the requisite mental state to be convicted of tampering with physical evidence, his act of "dropping or throwing the evidence to the ground in the presence and view of Officer Jenkin in a manner that left the evidence easily retrievable was not an act of concealment or removal sufficient to sustain an additional charge for tampering with physical evidence." *Id.*

Franklin views his case to be like *James*. Franklin contends that he was being followed closely by Sergeant Bailey on the access road during the vehicle chase. Because the officer was able to see a bag being thrown from the passenger window of the truck, his act was in plain view of the officer and the methamphetamine was easily retrievable by the following officers. Franklin asserts that the officers easily found the bag, which was not concealed.

The Commonwealth disagrees with Franklin and distinguishes the facts in this case from *James*. The Commonwealth points out that here, Franklin threw the methamphetamine out of the passenger window during a high-speed pursuit, not in the immediate presence of the officers. The Commonwealth asserts that it was quite fortuitous that Major Young found the bag of methamphetamine soon after Franklin threw it out the truck window. In that

9

regard, Major Young testified that he was following the pursuit at some distance and had "to really look" for the bag on the side of the road because the vegetation was so grown up. Therefore, the baggie of methamphetamine was not thrown in plain view and was not easily retrievable.

Under RCr 10.26, if an unpreserved error is found to be palpable and if it affects the substantial rights of the defendant, the appellate court may grant appropriate relief if manifest injustice has resulted from the error. An error is palpable when it is "easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). "When an appellate court engages in a palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006).

Under this standard, we conclude that the Court did not commit palpable error. In *James*, we adopted the rule that when a defendant merely drops, throws down, or abandons drugs in the vicinity of the defendant and in the presence and view of the police, and the officer can quickly and readily retrieve the evidence, the criminal act of concealment or removal has not taken place. *Id.* at 731. We agree with the Commonwealth that the facts here are unlike those in *James*. This is not a case in which Franklin, fleeing in a vehicle and being pursued, plainly and obviously "merely abandoned" the drugs in the vicinity of himself and in the presence of law enforcement officers. This is a case in which because of the vehicular pursuit, the evidence landed in a place

10

out of the officer's sight and made the recovery of the evidence substantially more difficult than in *James*. Consequently, there was no error.

**B.    Fleeing and Evading the Police on Foot**

Franklin moved for a directed verdict on the fleeing and evading charge regarding the foot chase. Franklin argued that the Commonwealth did not prove that he was operating the vehicle, that he fled from the vehicle, nor that there was a substantial risk of death or serious physical injury to the officers. On appeal, Franklin argues that the Commonwealth did not prove that he disobeyed an order to stop or created a substantial risk of serious physical injury or death to the officers when the crashed truck was abandoned. Because Franklin did not preserve the issue that there was no order to stop and he does not request palpable error review, we review only the preserved issue. *See Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008).

Pertinently, under KRS 520.095(1)(b), a person is guilty of fleeing or evading police in the first degree on foot "[w]hen, as pedestrian, and with intent to elude or flee, the person knowingly or wantonly disobeys an order to stop, given by a person recognized to be a peace officer" and "[b]y fleeing or eluding, the person is the cause of, or creates a substantial risk of, serious physical injury or death to any person or property." Franklin argues that there was no testimony that there was a substantial risk to the officers who searched the wildlife management area. The Commonwealth cites Slaton's testimony, describing the terrain and its inhabitants. Slaton testified that the area was

11

made up of slough,[5] with water standing on top of mud, unlevel and unsteady ground, dead trees, briars, pits of water, and snakes, specifically venomous cottonmouths and copperheads.

While Slaton did not explicitly testify that there was a substantial risk to the officers, the jurors could infer from Slaton's testimony that the officers were at substantial risk of death or serious physical injury, "physical injury . . . which causes serious and prolonged disfigurement, prolonged impairment of health, prolonged loss or impairment of the function of any bodily organ, or eye damage or visual impairment." KRS 500.080. We cannot say that the jury was clearly unreasonable in convicting Franklin of fleeing and evading the police on foot given the evidence introduced at trial and his conviction stands.

### III. A Double Jeopardy Violation Did Not Occur

Franklin's last claim of error is that a double jeopardy violation occurred when he was found guilty of two counts of first-degree fleeing and evading. Franklin requests palpable error review of this unpreserved claim. *See Cardine v. Commonwealth*, 283 S.W.3d 641, 652 (Ky. 2009) (stating that "double jeopardy violations can be addressed as palpable error because the nature of such errors is to create manifest injustice").

Franklin argues that the two convictions for first-degree fleeing and evading originated from the same police chase and that there was no definitive

---

[5] "Slough" is another term for "swamp." *Merriam-Webster.com Dictionary*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/slough (accessed Sept. 23, 2024).

proof offered to show that Franklin was ordered to stop two different times. Franklin specifically argues that because the car chase and the foot pursuit were a continuous course of conduct, his conviction of the two offenses violates the bar against double jeopardy reflected in KRS 505.020(1)(c). The Commonwealth disagrees that the facts here represent a single course of conduct.

The Fifth Amendment to the United States Constitution and Section 13 of the Kentucky Constitution prohibit a person from being twice punished or twice convicted for the same offense. In relation to this prohibition, KRS 505.020(1)(c) explains that while a single course of conduct may result in multiple charges, an exception exists which limits the conviction to one offense. KRS 505.020(1)(c) states that

> when a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense when . . . the offense is designed to prohibit a continuing course of conduct and the defendant's course of conduct was uninterrupted by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses.

At the time of Franklin's arrest, KRS 595.095(1) pertinently stated:

> (1)     A person is guilty of fleeing or evading police in the first degree:
>
>> (a) When, while operating a motor vehicle with intent to elude or flee, the person knowingly or wantonly disobeys a direction to stop his or her motor vehicle, given by a person recognized to be a police officer, and at least one (1) of the following conditions exists:

13

. . . .

4. By fleeing or eluding, the person is the cause, or creates substantial risk, of serious physical injury or death to any person or property; or

(b) When, as a pedestrian, and with intent to elude or flee, the person knowingly or wantonly disobeys an order to stop, given by a person recognized to be a peace officer, and at least one (1) of the following conditions exists:

. . . .

(2) By fleeing or eluding, the person is the cause of, or creates a substantial risk of, serious physical injury or death to any person or property.

*See* 2024 Kentucky Acts ch. 174 § 47.[6]

Franklin takes the position that his convictions stemmed from a single transaction — his attempt to avoid being stopped and apprehended by the police. The Commonwealth, on the other hand, asserts that each of Franklin's fleeing convictions were based on a separate act: one act of failing to stop his truck after the officer initiated a traffic stop and one act of fleeing on foot after

---

[6] Effective July 15, 2024, Kentucky Acts ch. 174 section 47 amended KRS 520.095(1)(b)2 and KRS 520.095(2). KRS 520.095(1)(b)(2), pertaining to fleeing and eluding by a pedestrian, was amended to remove the "or creates a substantial risk of" language. KRS 520.095(2) was amended to make the offense of fleeing or evading police in the first degree a Class C felony and to set conditions for release from prison. KRS 520.095(1)(b)2 currently states: "By fleeing or eluding, the person is the cause of serious physical injury or death to any person or property. KRS 520.095(2) currently states: "Fleeing or evading police in the first degree is a Class C felony and the defendant shall not be released on probation, shock probation, conditional discharge, or parole until he or she has served at least fifty percent (50%) of the sentence imposed."

14

exiting the truck. The question here is whether multiple sentences were imposed upon Franklin for the same offense of fleeing or eluding police.

*Welborn v. Commonwealth,* 157 S.W.3d 608, 611-12 (Ky. 2005), and *Kiper v. Commonwealth,* 399 S.W.3d 736, 745 (Ky. 2012), are cited by both parties as offering guidance in this case. In *Welborn,* addressing KRS 505.020(1)(c), we concluded that three separate assault convictions, surrounding the shooting a police officer, would stand because there was a sufficient break in the conduct and time of the defendant's actions. The Court found that the three separate shots did not constitute a continuing course of conduct. In *Kiper,* after concluding that the defendant's convictions for both attempted murder and first-degree assault of one shooting victim violated KRS 505.020(1)(b), we also concluded that unlike in *Welborn,* the facts did not establish that the defendant's assault conduct was two or more separate distinct attacks during one episode of criminal behavior. 399 S.W.3d at 745.

In *Welborn,* the defendant shot a trooper three separate times and inflicted three separate wounds. 157 S.W.3d at 612. There, the trooper was called to a residence where the defendant was staying. *Id.* at 611. Welborn first shot the trooper in the right arm. *Id.* The trooper then sought cover in the next room and after running out of the house towards his cruiser, Welborn fired again, striking the trooper in the neck. *Id.* An attempt by the brother-in-law to disarm Welborn failed following another brief struggle. *Id.* The officer was able to obtain a shotgun from the cruiser, but Welborn fired again and struck the officer in the shoulder. *Id.*

15

In *Kiper,* the defendant pulled up beside a vehicle with three occupants. *Id.* at 739. Kiper then pointed a handgun through the open window of his truck at the front seat passenger and fired several shots in rapid succession. The front-seat passenger was struck seven times. *Id.*

*Welborn* and *Kiper* reflect the principle that for multiple convictions to be proper there must have been a cognizable lapse in the defendant's course of conduct during which the defendant could have reflected upon his conduct, if only momentarily, and formed the intent to commit additional acts." *Welborn,* 157 S.W.3d at 612; *Kiper,* 399 S.W.3d at 745. As noted above, the *Welborn* court concluded that the defendant's conduct reflected distinct criminal acts, whereas in *Kiper,* it did not.

Here, Franklin argues that, like in *Kiper,* his alleged actions were an uninterrupted continuous course of conduct. Specifically, as KRS 520.095 requires that a defendant disobey an order to stop and the creation of a substantial risk, Franklin describes the chase as all the same event. He asserts that the event started when Sergeant Bailey pulled out behind him and initiated a traffic stop and the car chase ensued and the event did not stop when the truck wrecked. Franklin was not told to stop by the police when the truck stopped. Franklin fled before the officers who were already in pursuit arrived at the wreck. Franklin notes that the Commonwealth put on proof that Sergeant Bailey initiated a traffic stop and Franklin allegedly ran. Then the Commonwealth put on proof Sergeant Bailey found the truck he was chasing

16

wrecked onto an embankment. There was no one in the wrecked truck and no one was found in the surrounding area.

The Commonwealth rebuts Franklin's argument asserting that Franklin's claim of a continuous course of conduct is unsupported by the evidence. That is, after Franklin wrecked the truck, he had enough time to reflect on whether to continue his flight, even if it were only minutes. Rather than surrendering to the police, he fled from the wrecked vehicle and was not apprehended for several hours. Thus, after fleeing in the truck in violation of KRS 520.095(1)(a), Franklin had enough time to form the requisite intent to commit a second criminal offense and flee on foot in violation of KRS 520.095(1)(b).

Upon review, we agree with the Commonwealth. After Franklin crashed the truck, he had sufficient time to form the requisite intent to commit an additional offense, that is, fleeing on foot, which was a separate means of flight. "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

We conclude that no double jeopardy violation occurred.

## CONCLUSION

Finding no error, we affirm the Hopkin's Circuit Court's judgment.

All sitting. All concur.

17

COUNSEL FOR APPELLANT:

Adam Meyer
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General

Melissa Ann Pile
Assistant Attorney General

18